Argued and submitted April 21, affirmed July 15, petition for review denied December 1, 1998 (328 Or 115)

# STATE OF OREGON,
*Appellant,*

*v.*

# CULLEN J. PYLE,
*Respondent.*

## (97CR0082; CA A97782)

963 P2d 721

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Steven Plinski argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Landau and Armstrong, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

The state seeks reversal of a pretrial order granting defendant's motion to exclude evidence of his acts of violence against his wife and a former spouse before the events that led to his wife's death. ORS 138.060(3). First, the state contends that the evidence meets the criteria established in *State v. Johns*, 301 Or 535, 555-56, 725 P2d 312 (1986), for determining probative value. Second, the state argues that, even if the *Johns* criteria are not met, section 29 of Senate Bill 936 (SB 936) requires the admission of the evidence. We review for errors of law, ORS 138.220, and affirm.

Defendant fatally shot his wife on January 9, 1997. Less than an hour before the shooting, the victim's father spoke with defendant and the victim by telephone. He heard defendant telling the victim "to get off the phone" and he testified that he could discern that defendant had been drinking. Shortly after that telephone call, the victim's brother spoke with her by telephone. He also asserts that both defendant and the victim were intoxicated at the time. In the background, he heard defendant swearing at the victim and telling her to hang up the telephone. Police officers arrived at defendant's home after defendant called 9-1-1 and reported that "he had accidentally shot and killed his wife." They found the victim lying on her side on a sofa in the living room with her head resting on the arm of the sofa. She was dead with a visible wound to her head. The officers observed bullet holes in the wall behind her head and in the phone across the room. A handgun was found in the bedroom. Defendant readily admitted that he had argued with the victim and shot her.

Defendant is charged with murder under ORS 163.115. The indictment reads:

> "The said defendant, on or about the 9th day of January, 1997, in Coos County, Oregon, did unlawfully and intentionally cause the death of another human being * * *."

In order for defendant to be found guilty of murder as charged, the state must prove that he intended to pull the trigger of the gun with the objective of killing the victim.[1] At

---

[1] ORS 161.085(7) provides:

the pretrial hearing, defendant's counsel assured the court that defendant does not claim that the shooting was accidental and that he would not take that position at trial. The state's understanding of defendant's present position is that he asserts that he was under the influence of an extreme emotional disturbance when the shooting occurred and that he was unable to form the requisite intent. To help prove that the shooting was intentional, the state seeks to introduce six prior incidents of domestic violence. The state, as the proponent of the evidence, has the burden of demonstrating the admissibility of those prior incidents. *State v. Pratt*, 309 Or 205, 210, 785 P2d 350 (1990). The state agrees that defendant's prior bad acts are not admissible to prove that, on this occasion, he acted in conformity with his violent disposition. OEC 404(3);[2] *Johns*, 301 Or at 550-51. Rather, the issue is whether the evidence is relevant to defendant's intent or motive when the victim was shot.

Evidence is relevant when it has a tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence. OEC 401. The court in *Johns* established the criteria to determine whether the proffered evidence in this case is relevant to the issue of intent. Those criteria are:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

---

" 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described."

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

"(5) Were the physical elements of the prior act and the present act similar?" *Johns*, 301 Or at 555-56.

If each of the questions receives an affirmative answer, then a sixth question requires the trial court to exercise discretion in weighing the probative value of the evidence against the danger of unfair prejudice if admitted. *Pratt*, 309 Or at 211.

The trial court ruled that some of the prior incidents were admissible and others were inadmissible. Two incidents involving the use of a gun by defendant against the victim were held admissible. In each, defendant, while intoxicated, had argued with the victim and had used a gun in a threatening manner. In one incident, he shot at her. In the other incident, he put a gun in her mouth. The court excluded an incident involving defendant and his former spouse and three other incidents involving the victim on the ground that the events were not sufficiently similar to the circumstance of the shooting of the victim to be admissible under OEC 404(3).

In *Pratt*, the court said regarding the fifth criterion of *Johns*:

"The circumstances of each crime as a whole must be compared. First, the trial judge must find that there are significant similarities in the physical elements of the two crimes. If that test is met, then the trial judge must consider the differences between the physical elements of the two crimes. The differences may be minimal—for example, the offender may have used different words to indicate his intent. On the other hand, the differences may be so great that they overwhelm the similarities. The point is: The dissimilarities must be as fully considered as the similarities in answering this question.

"Determining what constitutes a significant similarity is a matter to be decided on a case-by-case basis. Some similarities are so common as to be trivial (for example, the offender spoke English during both crimes) while others may be so unusual as to be significant even standing alone (for example, the offender spoke a foreign language when he intended to rape, but spoke English otherwise). Most often the significance of the similarities will arise out of their combination." 309 Or at 214.

We will address each of the excluded incidents by referring to them in the manner used by the trial court and the parties.

■     Incident No. 1 occurred more than ten years before the shooting in this case and involved a different victim, defendant's first wife, Sharon.[3] Sharon was in the kitchen when defendant walked up behind her, bashed her in the head and then punched her in the eye. Defendant appeared to be under the influence of alcohol or illegal substances at the time. Thereafter, he grabbed her and threw her around the kitchen, causing further injury. When she landed on her back, defendant began punching and slapping her in the face. Defendant pounded her head into the floor as he shouted at her to "shut up" and to do what he said. When she became hysterical, defendant tried to break her neck and choked her to the point where she could not breathe. He then put her on a stool, told her to shut up and struck her each time when she whimpered. After the assault, defendant forced her to engage in sexual intercourse.

The state argues that the evidence of Incident No. 1 is relevant to defendant's motive and intent when his wife was shot on January 9, 1997. It asserts that the evidence helps prove, "that when similarly agitated and intoxicated in a domestic setting, defendant will act violently and intentionally against his spouse." There are similarities between Incident No. 1 and the shooting in this case. Both events involved the use of force and infliction of physical injury to the victims, and defendant appeared to be under the influence of alcohol or drugs both times. In both cases, defendant acted in a controlling manner.

There are also dissimilarities. In the prior incident, defendant used his fists to inflict physical injury, while in this case a gun was the instrument that caused the victim's death. There is no evidence of assaultive conduct by defendant with his fists or hands. The prior incident apparently was not precipitated by an argument or dispute. In this case, defendant and the victim were arguing on the night of the

---

[3] Defendant asserts generally that he will dispute the facts of all four incidents. Because the trial court was not faced with any specific disputes over the state's version of the events, we will accept its version as historical fact for purposes of this appeal.

shooting before the victim died. Also, the prior incident involved a sexual assault, and there is no evidence of that kind of assault in this case.

Incident No. 1 is "undeniably probative of a propensity towards violence," but, as a matter of law, more is required. *State v. Whitney-Biggs*, 147 Or App 509, 532, 936 P2d 1047 (1997) (citing *State v. Rinkin*, 141 Or App 355, 370, 917 P2d 1035 (1996)). Incident No. 1 involved a different victim. It occurred 10 years before under different circumstances from the shooting of defendant's wife. Aside from the tendency of the earlier conduct to show that defendant is the kind of person who assaults his spouses when intoxicated, the evidence is not probative of defendant's state of mind ten years later about whether he intended to kill his wife. We conclude that the dissimilarities between the physical elements in this case and the shooting are sufficient to render the evidence irrelevant to the issue of defendant's intent and that the trial court did not err in excluding evidence of Incident No. 1.

■ Incident No. 3 occurred in 1994. It involved a physical and apparently a sexual assault by defendant on the victim. While intoxicated, defendant held the victim on the floor of their house with his hand over her mouth as she was screaming and struggling. He tried to rip her clothes off. The victim's daughter interrupted the assault by stepping out of her room, although she reported hearing the struggle continue after she returned to her room. The next day, the victim had bruises on her face.

Incident No. 5 involved a battery by defendant on the victim about seven years before the shooting. The two had argued earlier in the day. That night, defendant came home intoxicated and dragged the victim out of bed, hitting her on the head, face, arms and chest. When police officers arrived in response to the victim's telephone call, they observed her reddened face and hands. Defendant pled guilty to battery under Idaho law as a result of the incident.

Incident No. 6 also involved a battery by defendant on the victim that took place in their car in a store parking lot approximately four years before the shooting. During an

argument, defendant yelled at the victim and punched her in the face. She honked the horn and attempted to get out of the car. Witnesses called 9-1-1, and the police officers, who arrived at the scene, reported that the victim suffered a black eye, a bloody nose, and a cut lip. The officers also reported that defendant appeared intoxicated. Defendant denied that he had hit the victim and said that her injuries were accidental. He later pled guilty to battery under Idaho law.

The state argues that evidence of Incident Nos. 3, 5 and 6 are relevant to defendant's motive and intent when he shot his wife on January 9, 1997. Again, it contends that the evidence helps prove, "that when similarly agitated and intoxicated in a domestic setting, defendant will act violently and intentionally against his spouse." Also, it asserts that the evidence demonstrates that defendant engaged in a continuing course of physical abuse intended to control the victim. Accordingly, it concludes that a jury could infer from the evidence that the defendant acted intentionally when the victim was shot. After analyzing all three incidents for similarities and dissimilarities to the physical elements to the charged shooting, we hold that the evidence about Incident Nos. 3, 5 and 6 was properly excluded.

The similarities include: the use of force and the infliction of physical injury to the victim's head, the fact that defendant had been drinking on all of the occasions and that none of the incidents involved the apparent need for self-defense by defendant. The major dissimilarity between the prior incidents and the shooting is that the prior incidents involved assaultive conduct by defendant with his fists, as distinguished from the charge that he pulled the trigger of the gun with the intention to kill the victim.

Again, all the incidents demonstrate a propensity by defendant towards violence and that defendant is the sort of man who assaults his spouse when intoxicated. However, the narrow issue here is one of scienter on a specific occasion, *i.e.*, whether defendant intentionally pulled the trigger of the gun meaning to kill the victim. If the victim had died from a physical assault rather than from a single gunshot wound to the

head, there would be a stronger argument that the prior pattern of domestic violence had escalated to a level of lethal violence because of defendant's desire to control her.[4] However, the fact that defendant physically assaulted the victim on several occasions in the past with his fists does not make it any more likely that he acted with the conscious objective on January 9, 1997, of killing her by shooting her with a gun. Even though killing someone may be the ultimate act of control over that person, the means by which death occurred here is so different from the manner in which force was used in Incident Nos. 3, 5 and 6 as to be determinative of the issue. *See, e.g., State v. Pratt,* 309 Or at 214 (holding that although evidence of a prior crime had a tendency to show that the defendant was the sort of person who commits rape, the dissimilarities in the manner in which the crimes were committed outweighed any similarity for the purpose of showing an intent to rape). We conclude that the dissimilarities between the shooting and incidents of assault are sufficient to render the evidence irrelevant to the issue of defendant's intent and that the trial court did not err in excluding evidence of Incident Nos. 3, 5 and 6.

■    The state contends that SB 936 requires admission of the excluded evidence even if the prior incidents fail to meet the *Johns'* criteria. The state correctly asserts that SB 936 applies to this case because it is a pending criminal trial. *State v. Meyers,* 153 Or App 551, 560, 958 P2d 187 (1998). SB 936 amended OEC 404(4) to read: "In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible *if relevant * * *.*" (Emphasis supplied.) The trial court's application of the five *Johns'* criteria and its order to exclude the prior acts for failing to meet that criteria is a determination of *relevancy. Pratt,* 309 Or at 211. Evidence of prior crimes, wrongs or acts cannot be admitted unless relevant to some material issue in the charged crime. *Id.* In this case, the evidence of four prior incidents was excluded because they are not *relevant* under the *Johns* criteria to the issue of defendant's intent or motive in the shooting death of his wife. Accordingly, the effective date of SB 936 after the

---

[4] *See, e.g., State v. Stevens,* 147 Or App 592, 938 P2d 780 (1997), *rev allowed* 326 Or 57 (holding that evidence of battered women's syndrome was relevant to show why victim's mother acted in a particular manner).

trial court's order does not change the correctness of the trial court's rulings.[5]

The state also asks us to reach the issue of whether the victim's statements to others about the incident when defendant shot at her are inadmissible hearsay. OEC 804(3)(f). In the days following that incident, which occurred several years before the death of the victim, the victim related details about the incident to three of her friends. The trial court held that the prior shooting incident was admissible but raised questions about the admissibility of the victim's statements to her friends relating to the incident. The state asked the trial court to indicate how it would rule if the evidence was offered, and the court ultimately indicated that it had reservations about the admissibility of the evidence in several respects. However, it noted that defendant had not formally moved to exclude the hearsay statements from evidence and declined to include any ruling about them in the formal order that is the basis for the state's appeal. ORS 138.060 permits the state to appeal only from "[a]n order made prior to trial suppressing evidence." The trial court's refusal to rule formally before trial on the issue precludes the state from raising that issue on appeal.

Affirmed.

---

[5] Defendant argues the state did not urge SB 936 as a basis for admission of the evidence and therefore may not now rely on that statute as a basis for reversal of the trial court's order. The trial court signed its order on May 29, 1997. SB 936 became effective June 12, 1997. Or Laws 1997, ch 313, § 39. SB 936 applies to this case because the legislation provides for retroactive application to any case pending as of December 5, 1996.