Argued and submitted October 16, 1998, affirmed May 12, 1999

# STATE OF OREGON,
*Appellant,*

*v.*

# JOHN ERVA DUNN,
*Respondent.*

# (10-97-02208; CA A98958)

981 P2d 809

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Marc A. Spence argued the cause for respondent. With him on the brief were Karen M. Stenard and Horton & Barnes, LLP.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, S. J.*

* Retired February 28, 1999.

## WARREN, S. J.

Defendant is charged with first-degree robbery and kidnaping arising from an aborted robbery of a convenience store and abduction of the store clerk. There is no significant dispute about the facts of the crime; the primary issue at trial will be whether defendant is the person who committed it. The state appeals the trial court's pretrial rulings excluding evidence that, the state believes, tends to prove that defendant was the criminal. The trial court held that the non-expert evidence was irrelevant and excluded the testimony of a state expert. We affirm.

In February 1997, a man entered a convenience store in Eugene, grabbed the clerk on duty from behind, and placed a knife to her throat. He forced the clerk to open the cash register, but did not take any money, and then began dragging her out of the store. When she struggled, he told her to "shut up, or I'll gut you like a fish." Two customers acted to help the clerk, and the man let go of her and fled on foot. The clerk and customers subsequently identified defendant as the person involved, although there are problems with the reliability of each of the identifications. The state seeks to use the evidence in question to support its position that defendant committed the crimes.

The first evidence that the state wishes to introduce involves an incident that occurred early in the morning on July 5, 1982, when defendant was 17 years old. While a couple was sleeping in a Volkswagen camper van in an established campground south of Hood River, defendant entered the van. He woke the couple, pointed a rifle at the husband and told him to stay where he was or defendant would blow his head off, and ordered the wife to come out of the van and accompany him. He did not attempt to steal anything. While the wife was preparing to leave, the husband was able to grab the rifle, whereupon defendant fled, driving off in a Pinto that he had parked nearby. The husband fired one shot from the rifle in the direction in which defendant fled. When he was apprehended, defendant asserted that his only purpose was to steal the van. He was charged with the juvenile equivalent of burglary. The record does not show that the charge resulted in any adjudication.

The second category of evidence involves items found in defendant's house after his arrest.[1] They include several swords, a crossbow, model airplanes, and a poster of 13th century arms found in defendant's room and a book, "Rites of Burial," a "true crime" story of a serial killer, that was found in defendant's wife's room.[2] Defendant's sister-in-law testified that she brought the book with her on a visit and accidentally left it in the room when she returned to her home.

Finally, the state seeks to use the evidence of Sergeant Gebo of the Seattle Police Department, whom it offered as an expert in "criminal investigative analysis." Gebo's expertise involves attempting to determine from the nature of a crime the kind of person who may have committed it in order to help investigators find possible suspects. He testified to features of the 1982 incident that, he believed, were relevant to identifying defendant as the person who committed this crime: Both events showed elevated or extreme amounts of violence compared to other cases where the potential gain would be the same, in that the use of a weapon and the confrontation of the victims was elevated above normal, and both involved the actual display of force from close proximity. Those things, Gebo thought, showed an intent to exert dominion and control over the victim. Gebo also testified that the items in defendant's room showed a "very fruitful fantasy life" that was centered on domination and control. On cross-examination, Gebo agreed that, when he described something as "relevant," he meant that it was relevant to the needs of a police investigation, not that it met the legal standards for relevance under the Oregon Rules of Evidence.

We must first determine the criteria by which to judge the admissibility of the disputed evidence. OEC 404(2) provides, with exceptions that do not apply to this case, that evidence of a person's character is not admissible "for the

---

[1] The police photographed these items during a search of defendant's house but did not seize any of them. The state wants to introduce the photographs, testimony of the searching officers, and a different copy of the book "Rites of Burial."

[2] Defendant's house contains three bedrooms. Defendant and his wife share the master bedroom for sleeping, and each uses one of the others for his or her personal interests. Defendant's wife's room also is the guest bedroom.

purpose of proving that the person acted in conformity therewith on a particular occasion[.]" OEC 404(3) prohibits the admission of evidence of "other crimes, wrongs or acts" if the purpose of the evidence is "to prove the character of a person in order to show that the person acted in conformity therewith." However, the evidence may be admissible for other purposes that include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The seminal case concerning evidence of character and other crimes under the Evidence Code is *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), in which the Supreme Court noted that OEC 404(3) states a rule of inclusion, not exclusion. That is, evidence of other crimes is admissible if it is relevant to some issue *other than* the defendant's disposition or propensity to commit a crime or other act; the specific purposes that the rules list are simply examples of permissible uses. 301 Or at 542-48. The trial judge's task in evaluating such evidence is first to determine the relevance of the evidence to the issues being tried. In doing so the court should look at all of the issues in the case to see if the evidence is relevant to some issue other than the defendant's propensity to commit certain acts. *Id.* at 549. If the court determines that the evidence is relevant for a permissible purpose, it must then balance that probative value against the dangers of unfair prejudice, confusion of the issues, and the other things that OEC 403 describes. *Id.* at 550. The court then established six criteria for evaluating whether evidence of other crimes was admissible to show intent or absence of mistake, which was the purpose at issue in *Johns*. The first five criteria were to determine whether the evidence was relevant; the sixth involved balancing under OEC 403. *Id.* at 555-56.

In *State v. Pinnell*, 311 Or 98, 806 P2d 110 (1991), the Supreme Court discussed the admissibility of evidence of other crimes when the purpose of the evidence was to prove identity based on *modus operandi*. It held that, for the evidence to be admissible, the state had to prove by a preponderance of the evidence that "(1) there is a very high degree of similarity between the charged and uncharged crimes; and (2) the methodology is attributable to only one criminal," that

is, it is so distinctive that it earmarks the acts as the handiwork of the accused (the "mark of Zorro" test). It also described three factors for determining whether there is a high degree of similarity between the charged and uncharged crimes: (1) the time lapse between the crimes; (2) the geographic distance between the crimes; and (3) the resemblances between the methodologies of the crimes. 311 Or at 109-10. If the court concludes that the crimes are sufficiently similar, it will then balance under OEC 403 before deciding whether to admit the evidence. *Id.* at 112-13. *See also State v. Johnson*, 313 Or 189, 832 P2d 443 (1992).

The state argues that the legislature's adoption of OEC 404(4) in 1997 requires us to apply a different standard of relevance from what these cases describe.[3] That rule provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) ORS 40.180, 40.185, 40.190, 40.195, 40.200, 40.205, 40.210 [OEC 406-412] and, to the extent required by the United States Constitution or the Oregon Constitution, ORS 40.160 [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

The state argues that the evidence is admissible under this section because it "tends to establish that defendant has an *unusual* and longstanding fascination with and predilection toward crimes of violence and abduction." (Emphasis in original.) Stated otherwise, the state wants to use the evidence to show that defendant has a propensity to commit crimes of the sort that occurred in this case. That use would be a classic character use of the sort that OEC 404(3) expressly excludes. The state also argues that the 1982 incident is sufficiently

---

[3] The state also argues that the evidence is admissible under Ballot Measure 40. After the state filed its brief, the Supreme Court held that Measure 40 is invalid. *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998). We therefore consider only issues under OEC 404(4).

similar to the 1997 crime that it is relevant to showing that defendant committed the latter crime, even if it does not satisfy the mark of Zorro test. In summary, the state asserts, all of the evidence is relevant "because it has a tendency to establish that defendant has *unusual* experience, and interest, and a motivation, that relates to the manner in which the crimes charged was [*sic*] committed." (Emphasis in original.)

The state's argument requires us to determine exactly how the adoption of OEC 404(4) changed previous law, something that is not entirely clear from the rule in its statutory context. The subsection certainly means that, once a court determines that other crimes evidence is relevant against a criminal defendant, it must admit the evidence without engaging in balancing under OEC 403 unless that balancing is constitutionally required. What is less clear is whether the subsection changes the criteria that cases such as *Johns* and *Pinnell* established for determining when evidence is relevant and the issues to which it is relevant. Specifically, we must decide whether evidence that it is relevant only to showing that a person has a propensity to do certain things is now admissible against a criminal defendant despite the other portions of OEC 404.

The prohibition against the use of propensity evidence is deeply rooted in the Anglo-American judicial system, going back at least to the seventeenth century; the Ninth Circuit has held that it is part of due process under the Fourteenth Amendment. *McKinney v. Rees*, 993 F2d 1378 (9th Cir), *cert den* 510 US 1020 (1993). As a British judge noted in 1692, the effect of the use of evidence of other bad acts is to "arraign [the defendant's] whole life," and to introduce matters that have nothing to do with the precise issues that the jury has to decide. *Id.* at 1380 (*quoting* 12 How St Tr 834). That, however, is exactly what much of the evidence that the state wants to use in this case would do.

As the state points out, OEC 404(4) makes evidence of a criminal defendant's other bad acts admissible "if relevant." The state does not, however, direct us to any portion of the amendment that changes the definition of "relevance." Under OEC 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." The court stated in *Pinnell* that "[b]ad character evidence (such as other crimes by the accused) is excluded under the propensity rule, not because it is irrelevant, but because of the risk of unfair prejudice to the accused" and that the rule prohibiting it is "a specific application of OEC 403." 311 Or at 105-06. A leading commentator suggests that propensity or character evidence is relevant but, at the same time, is so inherently prejudicial that it should be admitted with great caution, which the rules codified in OEC 404(2) and (3) exemplify. John W. Strong, ed., *McCormick on Evidence* § 190 (4th ed 1992) Those statements would indicate that propensity evidence has some level of relevance and may be admissible under the new rule.

That conclusion, however, would appear to be contrary to earlier cases that hold that the reasons for excluding propensity evidence include that it is both irrelevant to the issues in the case and directs the jury away from those issues that are relevant. *See, e.g., State v. Bailey*, 179 Or 163, 175-76, 170 P2d 335 (1946) ("Immaterial and irrelevant evidence, of course, should be excluded, especially if it indicates that the defendant committed a crime other than the one mentioned in the indictment. The prosecution is never permitted to introduce evidence showing that the defendant committed other crimes for the sole purpose of blackening his reputation and thereby rendering it easier for the jury to reach a verdict of guilty.");[4] *State v. Saunders*, 14 Or 300, 309-10, 315, 12 P 441 (1886) (Evidence of previous crimes will conduce more to conviction than direct testimony of defendant's guilt in particular case; jurors care little about facts of particular case if they believe defendant to be bad person. (Opinion of Thayer, J.)) Questions of criminal defendant in murder case concerning previous murder and frequent practice with firearms are "on matters not relevant to the issue" (Opinion of Lord, J.)).

---

[4] In *Bailey*, the court relied on *Boyd v. United States*, 142 US 450, 458, 12 S Ct 292, 295, 35 L Ed 1077, 1080 (1891), in which the United States Supreme Court held that evidence of other crimes "only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that [the defendants] were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death."

*See also, McKinney,* 993 F2d at 1381 ("Under the historic rule against character evidence, such evidence is not relevant to any fact of consequence.").

More recently, in *State v. Gailey,* 301 Or 563, 725 P2d 328 (1986), a burglary case decided the same day as *Johns,* the court suggested that other crimes evidence is inadmissible because it is irrelevant. In *Gailey,* the police found evidence linking the defendant to a different burglary when they searched his car after arresting him. The Supreme Court held that the trial court should have excluded that evidence because it did not have any tendency to prove that the defendant committed the burglary in question. "The state had the burden to prove beyond a reasonable doubt that this defendant burglarized the Burke house. The other crime evidence was not relevant to that issue." 301 Or at 567.

■ The parties have not directed us to any legislative history that is relevant to whether the legislature intended OEC 404(4) to change the centuries-old rule and require courts to treat evidence as relevant if it shows no more than a propensity to commit a crime. The original basis for the exclusion of such evidence was that it was irrelevant, the Supreme Court's various *dicta* appear to weigh more heavily on the side that the evidence is irrelevant, and there would be serious constitutional issues if we were to construe OEC 404(4) to allow all evidence of propensity. For these reasons, we conclude that the rule does not change the traditional standards for determining the relevance of evidence that might tend to prove the defendant's propensity to commit the crime. Those standards are designed, in large part, to ensure that the evidence actually is relevant for a nonpropensity purpose and that the jury evaluates the evidence against the defendant based on what he or she did, not who he or she is. If the evidence is relevant under those traditional standards, OEC 404(4) makes it admissible without balancing under OEC 403 unless the state or federal constitution requires that balancing.

This conclusion is consistent with our cases since the adoption of OEC 404(4), in which we have continued to apply the *Johns* and *Pinnell* criteria when the admissibility of evidence is based on a theory of relevance for which they are

designed. In *State v. Pyle*, 155 Or App 74, 963 P2d 721, *rev den* 328 Or 115 (1998), we applied the first five *Johns* criteria in determining that previous incidents of violence were irrelevant to the prosecution of defendant for allegedly murdering his wife. In addition, we pointed out that, under *Johns*, other acts that did not satisfy those criteria were not relevant to the issue of intent and therefore concluded that OEC 404(4) did not affect our decision. 155 Or App at 82-83. In the same way, in *State v. Davis*, 156 Or App 117, 967 P2d 485 (1998), we held that, under the first five *Johns* criteria, the proffered evidence of prior bad acts was not relevant to the issue of motive, which was the ground that the state asserted in seeking admission of the evidence. 156 Or App at 124-25. *See also State v. Sheets*, 160 Or App 326, 981 P2d 815 (1999); *State v. Barnum*, 157 Or App 68, 970 P2d 1214 (1998), *rev allowed* 328 Or 594 (1999) (applying criteria of *Johnson* and *Pinnell* to use of other bad acts to show identity without referring to OEC 404(4)).

In this case, the state wishes to use the evidence to show that defendant is the person who committed the crime. In *Barnum*, we recently summarized and applied the criteria that the Supreme Court established in *Pinnell* and *Johnson* for determining when evidence of other crimes is relevant to the issue of identity. The defendant in *Barnum* was convicted in Oregon of arson and burglary for burning the house of an insurance claims representative who was handling his claim against a third party for the third-party's insurer. Someone sent anonymous letters, both before and after the arson, accusing the adjuster of plotting to burn her own home. The other crimes evidence involved the defendant's previous conviction in California for attempted murder for sending a mail bomb to his college professor. In the California case, the defendant had written anonymous letters, both before and after the mailbombing, accusing another person of planning and perpetrating the crime. The trial court admitted evidence of the earlier crime and relied on it in convicting the defendant in a bench trial.

On appeal in *Barnum*, we held that the time lapse and geographic distance criteria for determining the similarity between the two crimes were of little importance because the defendant had been convicted of the previous crime. We

also noted that, in any case, under *Pinnell* the third criterion—the degree of similarity between the crimes—has the greatest weight. 157 Or App at 74-75. We held that there was a high degree of similarity between the two crimes. In addition to the obvious factual parallels, both the postal inspector who investigated the mailbombing in California and the detective who investigated the arson in Oregon, each of whom had extensive experience in criminal investigation, testified that the use of anonymous accusatory letters both before and after the crime was unique in his experience. Based on the entire record, we held that that use of anonymous letters was sufficient to constitute a signature crime and affirmed the trial court's decision; the evidence was the mark of Zorro. *Id.* at 75.

■ As in *Barnum*, in this case the criteria concerning temporal and geographic distance are of minor significance, because defendant undisputedly committed the 1982 offense. However, the facts in this case do not meet the high level of similarity that the facts in *Barnum* did. In 1982, defendant used a gun in a van parked in a campground; he arrived and fled by car. The criminal in this case used a knife in an open store; he arrived and fled on foot. The fact that defendant in 1982, and the criminal in this case, each used a strong threat in an attempt to get the victim to cooperate does not by itself make the crimes distinctive. Even accepting Gebo's testimony that the level of violence in each case was unusual in light of the apparent purpose of the crime, and even accepting the state's speculation that the motive in each case was some "deviant purpose, possibly sexual bondage and murder," the similarities are not sufficiently great to make evidence of the first crime admissible in the trial of the second. There is no mark of Zorro.

■ The lack of relevance of the items found in defendant's home is even clearer. It takes considerable effort to connect the book "Rites of Burial," found in defendant's wife's room, with defendant; even if it were possible to do so, all it would show is that defendant read one example of a popular genre of nonfiction. The same is the case with the swords and posters in the house; assuming that they show that defendant has an active fantasy life, they do not show that that

fantasy life involves "sexual bondage and murder" or anything else that is relevant to identifying him as the criminal. Unlike the death metal music that was the stimulus for, and accompaniment of, the murder in *State v. Hayward*, 327 Or 397, 963 P2d 667 (1998), these items, if they prove anything, prove only propensity.

Finally, Gebo's proffered testimony is almost exclusively propensity evidence. That in itself justifies the court's action in excluding it, without regard to other considerations. Use of propensity factors may well help the police investigate a crime by focusing their attention on certain categories of potential perpetrators. Once the investigation ends, however, it does not help to prove that the person on whom the police have settled is in fact the perpetrator. That requires evidence that somehow ties the specific defendant to the facts of the specific crime. As Gebo recognized, what is relevant to a police investigation is not necessarily relevant to a judicial inquiry.

Affirmed.