Submitted July 31, 2012, affirmed June 26, petition for review denied October 3, 2013 (354 Or 342)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WENDELL URCEL TEITSWORTH,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI090018; A145187

304 P3d 793

Peter Gartlan, Chief Defender, and Jonah Morningstar, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

**DUNCAN, J.**

In this criminal case, defendant was charged with one count of assault in the fourth degree constituting domestic violence, ORS 163.160, ORS 135.230(3) - (4), and one count of harassment constituting domestic violence, ORS 166.065(1), ORS 135.230(3) - (4). The charges arose from an altercation between defendant and his then-girlfriend, the victim. Before trial, the state filed a motion seeking a ruling on the admissibility of evidence of prior altercations between defendant and the victim, during which, the victim claimed, defendant was the initial aggressor and injured her. Defendant objected, asserting that the evidence was inadmissible under OEC 404(3), which provides, in part, that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." The trial court ruled that the evidence was admissible to prove, *inter alia*, defendant's "intent" and the "matter of self-defense."

At the subsequent jury trial, the state presented evidence of the prior altercations. The jury found defendant guilty of fourth-degree assault, but not guilty of harassment. The trial court entered a judgment convicting defendant of fourth-degree assault and sentencing him to 24 months of probation.[1]

Defendant appeals the judgment, assigning error to the trial court's admission of evidence of the prior altercations. For the reasons explained below, we affirm.[2]

Whether evidence of uncharged misconduct is relevant for a noncharacter purpose is a question of law; accordingly, we review a trial court's conclusions regarding the relevance of such evidence for errors of law. *State v. Titus,*

---

[1] Although the information charged defendant with fourth-degree assault constituting domestic violence, the jury found defendant guilty of fourth-degree assault. After the trial court issued the judgment, the state filed a motion asking the trial court to amend the judgment to reflect that defendant had been convicted of fourth-degree assault constituting domestic violence. The trial court denied the motion.

[2] In two additional assignments of error, defendant asserts that the trial court erred in allowing the prosecutor to, in his view, vouch for the victim and disparage the defense. We reject those assignments without discussion.

328 Or 475, 481, 982 P2d 1133 (1999). When doing so, we are bound by the court's findings of historical fact if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If the court did not make findings on a particular issue, and there is evidence from which the facts could be decided more than one way, we presume that the court found the facts consistently with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We state the facts in accordance with those standards.

Defendant and the victim were romantically involved and lived together intermittently from 2006 to 2008. On December 18, 2008, they had a physical altercation. The victim called the police and, when they arrived, she reported that defendant had punched her in the face several times, thrown her around the bedroom, and, when she was on the floor, kicked her in the face two or three times with his hiking boots. The victim also told the officers that defendant had put his hand over her mouth and that she had bitten his finger. The officers observed that the victim had scratches and a bruise on her face and was bleeding from the mouth.

Defendant told the officers that the victim had attacked him. He said that she had bitten him and that, in response, he had pushed her face away with his hand. Defendant told the police that the victim had scratched her own face in order to get him in trouble. The officers did not see any blood or skin under defendant's fingernails; they saw blood and what they thought might have been skin under the victim's fingernails. The officers arrested defendant.

As mentioned, defendant was charged with fourth-degree assault constituting domestic violence and harassment constituting domestic violence. "A person commits the crime of assault in the fourth degree if the person *** [i]ntentionally, knowingly or recklessly causes physical injury to another[.]" ORS 163.160(1), (1)(a). In this case, the state alleged that defendant recklessly assaulted the victim. For the purposes of the fourth-degree assault statute, "recklessly" is defined by ORS 161.085(9), which provides:

"'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Thus, to prove that a defendant has committed fourth-degree assault through reckless conduct, the state must prove that (1) the defendant engaged in conduct (2) when he was aware that the conduct created a substantial and unjustifiable risk of physically injuring another person, but consciously disregarded that risk, and, by doing so, grossly deviated from the standard of care that a reasonable person would observe in the situation, and (3) the conduct caused physical injury to another person.

"Physical injury" is defined, for the purposes of the fourth-degree assault statute, as "impairment of physical condition or substantial pain." ORS 161.015(7). The term "impairment of physical condition" means "harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time." *State v. Higgins*, 165 Or App 442, 446-67, 998 P2d 222 (2000). It includes, for example, a swollen, bloody lip. *See, e.g.*, *State v. Cetto*, 66 Or App 337, 340, 674 P2d 66, *rev den*, 296 Or 712 (1984) (child's swollen, bloody lip and facial bruises resulting from slapping constituted impairment of physical condition). The term "substantial pain" refers to the degree and duration of the pain suffered by the victim. It includes, for example, headache pain lasting approximately one hour. *State ex rel Juv. Dept. v. Greenwood*, 107 Or App 678, 682, 813 P2d 58 (1991); *see also State v. Poole*, 175 Or App 258, 261, 28 P3d 643 (2001) (victim, who was kicked in the forearm by the defendant, and who felt sharp pain for one hour and then throbbing pain for 24 hours, suffered "substantial pain"); *State ex rel Juv. Dept. v. Salmon*, 83 Or App 238, 241-42, 730 P2d 1285 (1986) (where victim experienced a combination of pain, swelling, and bruising as a result of being struck in the face with a plastic container, victim suffered "physical injury").

Prior to trial, the state filed a motion for a ruling on the admissibility of evidence of prior altercations between defendant and the victim during which, the victim claimed, defendant had been the initial aggressor and had injured her. The state argued that the evidence was admissible (1) to prove the culpable mental state for the charged assault, *i.e.*, recklessness, and (2) to disprove defendant's self-defense claim.

With respect to the first purpose, the state told the trial court that evidence of the prior altercations—including one in 2007 in which, according to the victim, defendant punched her in the face, giving her two black eyes and a swollen lip—was relevant to prove that defendant knew that punching could cause physical injury. Specifically, the state argued:

> "The crime of Assault in the Fo[u]rth degree, as charged, requires the state to prove that the defendant recklessly caused physical injury. The defendant's prior act of punching the victim was also reckless. The victim is the same person. Both acts involve the defendant using his fists in a punching motion on the victim's face. They have the same physical elements. *The prior acts show that he was aware of the risk of causing her physical injury and ignored that risk.*"

(Emphasis added.) And, with respect to the second purpose, the state argued that the uncharged misconduct evidence was relevant to whether or not defendant "was the aggressor."

Defendant objected to the admission of the state's proffered evidence, arguing that it was not relevant to any fact at issue in the trial, but was instead improper propensity evidence. He also argued that, even if the evidence was relevant, its probative value was substantially outweighed by the risk it posed of unfairly prejudicing the jury against him.

The trial court ruled that the evidence was admissible to prove "intent," the absence of accident, and to rebut the "matter of self-defense." The court also ruled that the evidence was admissible to prove defendant's "motive" and "plan."

The case proceeded to trial, and, as mentioned, a jury found defendant guilty of fourth-degree assault and not guilty of harassment. Defendant appeals, assigning error to the trial court's admission of the state's evidence of the prior altercations he had with the victim, including the one in which she suffered two black eyes and a swollen lip. He argues that the court committed reversible error by admitting the evidence under OEC 404(3), which governs the admissibility of uncharged misconduct evidence. In response, the state argues, as it did in the trial court, that the evidence was admissible to prove that (1) defendant recklessly assaulted the victim and (2) he did not do so in self-defense.[3]

OEC 404(3) provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Thus, in a criminal case, evidence of uncharged misconduct by the defendant is not admissible to prove that the defendant has a criminal character or a propensity to engage in criminal behavior. *State v. Pitt*, 352 Or 566, 576, 293 P3d 1002 (2012) (the admissibility of evidence of uncharged misconduct must be based on its relevance to a fact at issue in the trial; such evidence cannot be admitted to prove a propensity to commit such conduct). In order for the state to secure the admission of evidence of uncharged misconduct by the defendant, the state must prove that the evidence is "relevant to some *contested* issue beyond propensity or bad character." *State v. Phillips*, 217 Or App 93, 99, 174 P3d 1032 (2007), *rev den*, 345 Or 159 (2008) (emphasis in original).

When determining whether uncharged misconduct is relevant to prove a defendant's intent, courts should consider the following questions, set out by the Supreme Court in *State v. Johns*, 301 Or 535, 555-56, 725 P2d 312 (1986):

---

[3] The state does not argue that the evidence was admissible to prove "motive" or "plan," and, given our disposition, we need not determine whether the trial court's rulings regarding those theories of admissibility were correct.

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"[4]

As mentioned, on appeal, the state argues that the evidence of the prior altercations between defendant and the victim was admissible for two nonpropensity purposes. First, the state argues that the evidence was admissible to prove that, during the altercation underlying the charged assault, defendant acted recklessly. The state's argument is, as it was in the trial court, that the prior altercations were relevant to prove that defendant knew that the charged conduct gave rise to a substantial and unjustifiable risk that the victim would be injured. Specifically, the state argues that "the fact that [defendant] had assaulted [the victim] on prior occasions made it more likely that he was aware of the risk his conduct would injure [the victim] on the date in question."

That argument is unavailing. Evidence of uncharged misconduct is admissible only to prove contested issues. *Phillips*, 217 Or App at 99; *State v. Sicks*, 33 Or App 435, 438, 576 P2d 834 (1978) (generally, evidence of prior bad acts should be admitted to prove the required state of mind only when the defendant disputes whether he acted with that state of mind). Whether defendant was aware that the conduct for which the state prosecuted him—which included

---

[4] The 1997 enactment of OEC 404(4), which prohibits balancing the probative value of relevant uncharged misconduct evidence against its prejudicial effect in criminal cases, effectively eliminated the sixth factor of the *Johns* analysis. *State v. Dunn*, 160 Or App 422, 428, 981 P2d 809 (1999), *rev den*, 332 Or 632 (2001).

punching the victim in the face, throwing her around a bedroom, and kicking her in the face with his hiking boots—gave rise to a substantial and unjustifiable risk of physical injury was not a contested issue. Defendant did not claim that he did not know that such conduct could injure a person. Moreover, the charged conduct, if proven, would, by itself, "strongly indicate the required state of mind[.]" *Sicks*, 33 Or App at 438.

Here, if the state proved that defendant engaged in the conduct that the victim described to the police, which included punching and kicking the victim in the face, it would have necessarily proved that defendant acted at least recklessly. There was no dispute that the charged acts in this case were the types of acts that would give rise to an obvious, substantial, and unjustifiable risk of physical injury, which, as described earlier, includes swollen, bloody lips and facial bruises. *Cetto*, 66 Or App at 340. Thus, evidence of the prior altercations was not admissible to prove that defendant acted at least recklessly because that was not a contested issue.[5]

Second, the state argues that the evidence of the prior altercations between defendant and the victim was admissible to disprove defendant's claim that he acted in self-defense. When a defendant raises the defense of self-defense, the state has the burden of disproving the defense beyond a reasonable doubt. ORS 161.055(1). Self-defense is defined, in pertinent part, as follows:

---

[5] Indeed, defendant's intent was a conceded issue, at least in part. By asserting that he acted in self-defense, defendant conceded that he acted knowingly or intentionally. *State v. Boyce*, 120 Or App 299, 306, 852 P2d 276 (1993) ("To act in self-defense, a person must intentionally or at least knowingly engage in an act to prevent another from imminent use of physical force."). Because evidence that a defendant acted knowingly or intentionally is sufficient to establish that the defendant acted recklessly, defendant effectively conceded the culpable mental state for the charged assault. ORS 161.115(3) ("When recklessness suffices to establish a culpable mental state, it is also established if a person acts intentionally or knowingly."). Defendant did not dispute that he recklessly assaulted the victim; his defense was that the assault was justified.

The state points out that defendant did not admit to all of the conduct for which he was prosecuted and, therefore, the state contends, his self-defense claim did not eliminate the need for it to prove that the conduct he did not admit was reckless. But, again, the culpable mental state for the charged assault was recklessness, and the recklessness of the conduct for which defendant was prosecuted was not a contested issue because it would be established by proof of the conduct itself.

> "[A] person is justified in using physical force upon another person for self-defense * * * from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

ORS 161.209. Notwithstanding ORS 161.209, a person is generally not justified in using physical force if the person is the initial aggressor. ORS 161.215(2). The state argues that "the fact that defendant repeatedly had assaulted the victim in the past made it more likely that he was the initial aggressor in the charged incident[.]" We accepted a similar argument in *State v. Yong*, 206 Or App 522, 542-43, 138 P3d 37, *rev den*, 342 Or 117 (2006), where we held that evidence of prior misconduct by the defendant, who was charged with assaulting his girlfriend, was relevant to prove, "in opposition to defendant's defense, that defendant was the aggressor in the [charged] altercation."

In *Yong*, the victim initially told the police that the defendant, in a rage, had thrown her down, pinned her, and punched her, leaving bruises. She later recanted, saying that she had started an argument with the defendant and he had tried only to restrain her. Before trial, the state moved for a ruling on the admissibility of evidence that the defendant had been convicted of assault and menacing of the victim, as well as of assault of his former wife. The trial court ruled that the evidence was relevant to whether the defendant had acted intentionally in engaging in the charged conduct and ruled that it could be admitted.[6] *Id.* at 540. Following a jury trial during which the state presented evidence of the defendant's prior convictions, the defendant was convicted. The defendant appealed.

On appeal, the defendant challenged the admission of the evidence of his prior convictions, arguing that the evidence was not admissible to prove that he acted intentionally

---

[6] The trial court also ruled that the evidence was relevant to prove identity. On appeal, we held that that ruling was erroneous, citing *State v. Baughman*, 164 Or App 715, 995 P2d 551 (2000), *rev dismissed*, 333 Or 596 (2002), because identity was not a contested issue in the case. We explained, "[T]he issue was whether a crime had occurred, not whether the defendant, in contrast to some other person, had committed it." *Id.* at 540.

in committing the charged conduct because his defense was that he had not committed the conduct at all. In support of his argument, the defendant quoted *State v. Leach*, 169 Or App 530, 534-35, 9 P3d 755 (2000), *rev den*, 332 Or 632 (2001), in which we observed that

> "there is a substantial and unresolved question as to whether 'prior bad acts' evidence can ever be admitted as being relevant to intent where, as here, the defense is that the charged crime never occurred. That is, this is not a case of allegedly 'innocent' or 'accidental' ambiguous conduct."

We rejected the defendant's argument that his intent was not at issue, explaining that it was undisputed that the defendant and the victim had been involved in an altercation, during which the victim had been injured, and that whether the defendant had been the initial aggressor was a contested issue:

> "Both defendant and the victim acknowledged in their trial testimony that an altercation occurred between them on January 11 [the date of the charged crime]. It was also undisputed that the victim suffered physical injury during that incident. According to the victim, she was the aggressor, assaulting defendant by pushing him, trying to punch him in the chest and face, and kicking him 'hard' in the back. Defendant testified that he tried to restrain the victim but never struck her. But it was the state's theory that defendant had, in fact, been the aggressor, that he assaulted the victim as he had done in the past, and that the victim changed her story out of fear of retaliation."

*Yong*, 206 Or App at 542. Given the parties' theories, we held that the evidence of the defendant's prior convictions was admissible under *State v. Johns*, 301 Or at 555-56, and *State v. Moen*, 309 Or 45, 786 P2d 111 (1990). *Yong*, 206 Or App at 541-43.

In *Johns*, the defendant was charged with killing his wife by shooting her in the head. He claimed that the shooting was accidental. To prove otherwise, the state introduced, over the defendant's objection, evidence that the defendant had attempted to kill his former wife six years earlier. On review, the Supreme Court rejected the defendant's argument that the evidence was inadmissible propensity evidence. The court held that the evidence was admissible

to prove the defendant's intent because it tended to prove that, "when similarly agitated in a domestic setting defendant will act violently and intentionally." *Johns*, 301 Or at 551.

In *Moen*, 309 Or at 65-66, 69, the defendant was charged with killing his wife and mother-in-law, and the Supreme Court held that evidence that, three weeks earlier, he had pointed a shotgun at them and threatened to kill them was admissible to prove that he committed the charged killings, which he denied, and that he did so intentionally. The court observed that evidence of a defendant's prior hostile acts toward a victim "has special relevance to the issue of a hostile motive, which in turn is probative of intent. Evidence that shows a hostile relationship existed between a defendant and his victim tends to shed light on a defendant's *mens rea*." *Id*. at 68. Applying *Johns*, the court held that the evidence of the defendant's prior threats could be admitted to show "defendant's intentional reaction under similar circumstances." *Id*. at 69. The court also explained that "[t]he prior threat was relevant to prove that defendant later acted consistent with that expressed intent." *Id*. The court summarized, "Evidence of the prior altercation [was] relevant to show that defendant would kill, and kill intentionally." *Id*.

Applying *Johns* and *Moen* in *Yong*—where, as described above, the defendant was charged with assaulting his girlfriend, who initially said that the defendant had attacked her, but later said that she was the initial aggressor— we concluded that the evidence of the defendant's prior convictions was admissible to disprove the defendant's defense:

> "Here, as in *Johns* and *Moen*, the proffered evidence was admissible because it tended to prove that 'when similarly agitated in a domestic setting defendant will act violently and intentionally.' [*Moen*, 309 Or] at 69. That fact was directly relevant to the state's theory, in opposition to defendant's defense, that defendant was the aggressor in the January 11 altercation. As a consequence, the trial court did not err in admitting the challenged prior crimes evidence."

*Yong*, 206 Or App at 542-43.

In this case, as in *Yong*, there was no dispute that defendant and the victim had a physical altercation on the night of the charged incident, nor was there any dispute that, at a minimum, defendant pushed the victim in the face and that, when the police arrived, the victim's face was bruised and bleeding. Thus, while defendant admitted that he acted intentionally or knowingly with respect to some conduct, his specific intent—whether he did so in self-defense—was a contested issue. Accordingly, under *Yong*, 206 Or App at 542, evidence of defendant's prior altercations with the victim was admissible to prove "the state's theory that defendant had, in fact, been the aggressor[.]"

If evidence of uncharged misconduct is introduced to show a defendant's hostile motive toward the victim, "which in turn is probative of intent," *Moen*, 309 Or at 68, the evidence must meet the *Johns* test for admitting evidence of uncharged misconduct to show intent. *Johns*, 301 Or at 555-56; *see also State v. Pyle*, 155 Or App 74, 81-82, 963 P2d 721, *rev den*, 328 Or 115 (1998) (evidence of the defendant's prior acts of punching the victim was not relevant to prove that he intentionally shot the victim). Here, the charged act requires proof of intent; the prior act also required intent; the victim was the same in both acts; and both acts involved defendant striking the victim in the context of a domestic dispute. Therefore, we conclude that the trial court did not err in admitting the evidence of uncharged misconduct to rebut defendant's self-defense claim.

Affirmed.