Argued and submitted March 8, 1993, reversed and remanded in part; otherwise affirmed July 20, 1994

STATE OF OREGON,
*Respondent,*

*v.*

CHARLES RICHARD HILL,
*Appellant.*

(90-CR2020, 85-1393;
CA A67536 (Control); CA A67815)
(Cases Consolidated)

877 P2d 1230

Garrett A. Richardson argued the cause for appellant. With him on the brief was Multnomah Defenders.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

HASELTON, J.

Riggs, J., concurring in part; dissenting in part.

**HASELTON, J.**

Defendant appeals his convictions on two counts of sexual abuse in the first degree, ORS 163.425,[1] and the resulting revocation of his probation on an earlier conviction. The two cases have been consolidated for purposes of appeal. Defendant assigns error to the court's admission of hearsay statements made by one of the victims and to the court's refusal to admit evidence of sex abuse by people other than defendant. We reverse one count and otherwise affirm.

Defendant was convicted of sexually abusing his two daughters, L., age 4, and N., age 2. The trial court allowed four witnesses to testify to statements that L. made about the alleged abuse of herself and of N. Both girls were removed from their mother's home and placed in foster care in March 1990. Several months later, they began overnight visits with defendant. The girls' foster mother, Carolyn Thompson, testified that, following the second overnight visit with defendant, she saw L. acting out sexual intercourse with a two-year-old boy. Thompson testified that L. said she learned the behavior from "[m]y Daddy and Richard [defendant's seventeen-year-old son]" and "[t]hey take their clothes off and they get on top of me and they go ah, ah, ah." Thompson also testified that, two days later, she saw L. rubbing her vaginal area and that L. said the area hurt "because my Daddy done something."

Dr. Rabin, the girls' pediatrician, testified that L.'s hymenal opening was larger than the upper limits of what is considered "normal" for a child her age and that N.'s hymen was scarred, indicating a tear. Rabin also testified that L. told her she had been touched in her vaginal area by defendant, that defendant "hurt" her "there" and that she had seen the "privates" of defendant and Richard.

Carol Rodriguez of Children's Services Division (CSD) testified that L. told her "my Dad and Richard" were trying to touch her "private parts." Rodriguez also testified that, when asked to show with dolls how defendant touched her, L. took the clothes off of the man doll and girl doll, put them in a position indicating sexual intercourse and also

---

[1] Sexual abuse in the first degree is now codified at ORS 163.427.

spread the legs of the male doll and rubbed it against her own vaginal area. Rodriguez testified that L. said Richard touched her in the same way and that she said "she was going to be in big trouble because her daddy had told her so." L. also told Rodriguez that defendant and Richard had touched N.'s vaginal area with their hands. Deputy Haferkamp testified that L. repeated her statements and the doll demonstration for him when Rodriguez asked her to.

The state moved before trial to admit L.'s statements pursuant to OEC 803(18a)(b) (since amended Or Laws 1991, ch. 391, § 1), which provided, in part:

> "A statement made by a child victim who is under 10 years of age, which statement describes an act of sexual conduct performed with or on the child by another, is not excluded * * * if the proponent of admissibility establishes to the satisfaction of the court outside the presence of the jury, if any, that the time, content and circumstances of the statement provide substantial indicia of reliability. However, when the child is unavailable as a witness, the statement may be admitted in evidence only if there is corroborative evidence of the act of sexual conduct and of the defendant's participation in the conduct."

The court found L. unavailable to testify.[2] Thus, the state was required to establish both that "the time, content and circumstances of the statement[s] provide indicia of reliability" and that "there is corroborative evidence of the act of sexual conduct and of the defendant's participation in the conduct." OEC 803(18a)(b). Whether hearsay statements meet the requirements for admission under 803(18a)(b) is a preliminary question of fact for the trial court. *State v. Booth*, 124 Or App 282, 289, 862 P2d 518 (1993), *rev den* 319 Or 81 (1994).

Defendant argues that L.'s statements describing the abuse of both girls are not reliable and, thus, violate his right to confront witnesses guaranteed by Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Statements that meet the

---

[2] The trial court found that L. was unavailable to testify because she was "unable to communicate because of her fear" and because the judge did not think that "she fully understands or comprehends the idea of what the concept of telling the truth is." Defendant does not challenge the finding of unavailability.

reliability standard of OEC 803(18a)(b)[3] are inherently trustworthy and can be admitted without violating a defendant's confrontation rights. *State v. Renly*, 111 Or App 453, 461, 827 P2d 1345 (1992).

■　　The trial court discussed, on the record, the factors that supported reliability:

"The child's personal knowledge of the event: * * * she clearly had personal knowledge about the event. She described what happened.

"The age and maturity of the child: She's four. She has a little speech impediment, but I don't know she acted a lot—much different than many a four-year-old. * * *

"The credibility of the person testifying about the statement: * * * all the witnesses were credible. * * *

"There's no motive on the part of the child that I see. This was a child that was very happy to see her dad, was smiling at him and wanted to go sit by him * * *.

---

[3] The version of OEC 803(18a)(b) relevant to this appeal instructs that, in determining whether the statement possessed indicia of reliability,

"the court may consider, but is not limited to, the following factors:

"(A) The child's personal knowledge of the event;

"(B) The age and maturity of the child;

"(C) Certainty that the statement was made, including the credibility of the person testifying about the statement and any motive the person may have to falsify or distort the statement;

"(D) Any apparent motive the child may have to falsify or distort the event * * *;

"(E) The timing of the child's statement;

"(F) Whether more than one person heard the statement;

"(G) Whether the child was suffering pain or distress when making the statement;

"(H) The nature and duration of any alleged abuse;

"(I) Whether the child's young age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;

"(J) Whether the statement has internal consistency or coherence and uses terminology appropriate to the child's age;

"(K) Whether the statement is spontaneous or directly responsive to questions;

"(L) Whether the statement was elicited by leading questions; and

"(M) Whether extrinsic evidence exists to show the accused's opportunity to commit the act to which the child's statement refers."

"The timing of the child's statement: There was a weekend visitation with the father and two days later * * * she's doing things that make it appear that something has happened to her. * * *

"Several people heard the statement. Four people have testified to a statement being made. * * * She clearly had discomfort * * * talking about the events * * *.

"* * * * *

"Her young age makes it unlikely that she would fabricate this statement. * * * There was [sic] no internal inconsistencies.[4] The statement was coherent and her use of terminology was age appropriate according to the doctor * * * who interviews many children that age."

Defendant argues that many of these findings are undermined by the court's determination that L. was unavailable to testify in part because she did not fully understand the oath. However, the credibility of the declarant and the reliability of specific statements of the declarant are distinct issues. *See State v. Alvarez*, 308 Or 143, 147, 776 P2d 1283 (1989) (the reliability of hearsay statements from an informant may be established by showing either that the informant is credible or that the statements are reliable). The record supports the court's finding that L.'s statements were reliable. *See State v. Booth, supra,* 124 Or App at 290.

■ Defendant also argues that there was insufficient corroboration of L.'s statements. "Corroboration is an additional prerequisite that the legislature included * * * to ensure that an accused not be convicted solely on the basis of hearsay." *State v. Renly, supra,* 111 Or App at 463. Corroborating evidence can include "a confession, an eye witness account, physical evidence and evidence showing that the accused had access to the purported victim." 111 Or App at 463. Rabin's testimony that L. had an enlarged hymenal opening, consistent with a history of sex abuse, and L.'s sexual "acting out" corroborate the act of sexual conduct. Further corroboration flows from the timing of L.'s statements, defendant's opportunity to commit the abuse, and the

---

4 Defendant argues that L.'s statements about sexual contact were inconsistent with her acting out of sexual intercourse. L.'s statements suggested both sexual intercourse and sexual contact. The court correctly determined that the statements contained no "internal inconsistencies."

fact that the girls were not alone for extended periods of time with anyone except defendant and the foster mother.

■        Because L.'s statements were reliable and were sufficiently corroborated, the trial court properly admitted L.'s statements describing defendant's abuse of L. However, that does not conclude our inquiry concerning the admission of L.'s hearsay statements describing abuse of *N*. In particular, defendant argues that those statements were not admissible because they did not "describe an act of sexual conduct performed with or on the child [declarant] by another * * *." OEC 803(18a)(b).

■        The state contends that we should not reach this argument because it was not raised in the trial court. Defendant argued to the trial court that L.'s statements, including those pertaining to abuse of N., could not be admitted under OEC 803(18a)(b) because they were unreliable and not corroborated, but did not make the particular argument he now raises. In *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988), the court explained:

> "We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. * * * The first ordinarily is essential, the second less so, the third least. * * * Efficient procedures are instruments for, not obstacles to, deciding the merits, particularly when the alternative is a criminal conviction that lacks a basis in law or in fact." (Emphasis in original.)

Here, defendant raised the *issue* and the *source* of his position by arguing that the hearsay statements the state sought to admit did not satisfy the requirements of OEC 803(18a)(b) and were not otherwise admissible. Although defendant made different arguments for why this exception to the hearsay rule should not apply, he adequately preserved the issue for appeal, and we consider its merits. *See State v. Cooper*, 120 Or App 490, 493, 852 P2d 948 (1993), *rev'd on other grounds* 319 Or 162, 165 n 1, 874 P2d 822 (1994).

Carol Rodriguez of CSD testified that L. told her that defendant had touched N.'s vagina. The trial court, over a defense objection, admitted that testimony under OEC 803(18a)(b) as:

"A statement made by a child victim * * * which statement describes an act of sexual conduct performed with or on the child by another * * *."

The rule's language is not ambiguous. Its "plain, natural and ordinary meaning," *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), limits its hearsay exception to statements about "first-party" sexual conduct — *i.e.*, conduct in which the child victim declarant was a direct ("with or on") participant.[5]

The state would have us read the rule as encompassing statements about "third-party" sexual conduct — *i.e.*, conduct the child may have observed. Indeed, the state would rewrite the rule to admit hearsay statements describing:

"Sexual conduct performed with or on the child by [the defendant], *or with or on another by the defendant in the child's presence * * *.*"[6]

This stretches the language to the breaking point, and beyond. *See* ORS 174.010 (in construing statutes, judges are "not to insert what has been omitted, or to omit what has been inserted"). By admitting L.'s hearsay statement about abuse of N., the trial court, in effect, permitted an incompetent four-year-old to testify about something that happened to her two-year-old sister. OEC 803(18a)(b) does not countenance that result.

■　　This error was not harmless. Rodriguez's testimony recounting L.'s statement was the only direct evidence that defendant had abused N. and was, consequently, critical to the jury's consideration of that charge. Defendant's conviction for abuse of N. must be reversed and remanded.

---

[5] We note that Washington law provides a similar exception for hearsay statements

"made by a child when under the age of ten describing any act of sexual contact performed *with or on* the child by another, * * * not otherwise admissible by statute or court rule * * *." Wash Rev Code § 9A.44.120. (Emphasis supplied.)

That state has held that its statute "does not by its terms apply to a statement by a child describing an act of sexual contact performed on a *different* child." *State v. Harris*, 48 Wash App 279, 284, 738 P2d 1059 (1987). (Emphasis in original.)

[6] It is by no means clear that the disputed testimony would be properly admitted even under the state's attenuated construction. Rodriguez did not testify that L. said that N. was abused in her presence.

■   Defendant next assigns error to the trial court's refusal to allow testimony that L. acted out sexual behavior before she began visiting defendant and that she told her foster mother and Rodriguez that her mother stuck a knife in her vagina. The state objected that admission of those statements would violate OEC 412. Following defendant's offer of proof, the court ruled:

"The statute [OEC 412], you know, clearly says that evidence of other sexual incidents are not admissible. But maybe in the overall context of—of this particular case the Court of Appeals will take a different view of it."

OEC 412 provides, in pertinent part:

"(1)   [I]n a prosecution for [certain sexual offenses, including first degree sexual abuse,] * * * reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

"(2)   [E]vidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is [evidence that]:

"* * * * *

"(b)(B)   Is necessary to rebut or explain scientific or medical evidence offered by the state."

Defendant moved to admit the statements as "relevant to say that there could have been another perpetrator or, in the alternative for impeachment purposes."[7] Defendant further argued that evidence pertaining to another possible perpetrator was "necessary to rebut or explain" Rabin's testimony that L. had an enlarged hymenal opening. OEC 412(2)(b)(B).

We need not consider the propriety of the trial court's application of OEC 412(2)(b)(B) because any alleged error was harmless. *See* OEC 103(1) ("[e]videntiary error is

_____

[7] We note also that OEC 412(3) provides:

"[T]he accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case."

The state does not address whether defendant complied with this requirement.

not presumed to be prejudicial"). There is substantial and convincing evidence of defendant's guilt and little likelihood that the error affected the result. *See State v. Abercrombie*, 108 Or App 447, 450, 816 P2d 656 (1991). L. consistently reported that defendant sexually abused her. Moreover, although the jury was aware of L.'s repeated statements that defendant's son Richard had also sexually abused her, the jury still found defendant guilty. There is little, if any, likelihood that evidence of an additional perpetrator would have affected the jury's finding that defendant abused L.

In light of our disposition of the conviction for sexual abuse of L., the court properly revoked defendant's probation.

Reversed and remanded as to the conviction on Count 4; otherwise affirmed.

**RIGGS, J.,** concurring in part; dissenting in part.

I agree with the majority that hearsay testimony about L.'s recounting of defendant's conduct towards her was properly admitted under OEC 803(18a)(b). Consequently, I agree that defendant's conviction for sexual abuse of L. should be affirmed. However, I disagree with the majority's interpretation of OEC 803(18a)(b) and conclude that L.'s statements describing abuse of N. were admissible. Therefore, I would also affirm defendant's conviction for sexual abuse of N.

In this case, we must interpret the language of OEC 803(18a)(b), "statement concern[ing] conduct *with* or on the child" (emphasis supplied), to determine if it is broad enough to cover L.'s statements about sexual conduct that occurred in her presence. Our goal in statutory interpretation is to discern the intent of the legislature, and the text of a statute is the best evidence of that intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). At this first level of analysis, we also examine the context of the statute and consider those rules of statutory construction that bear directly on how to read the text. 317 Or at 611.

The majority concludes that OEC 803(18a)(b)'s " 'plain, natural and ordinary meaning' * * * limits its hearsay exception to statements about 'first-party' sexual

conduct." 129 Or App at 187 (quoting *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611). I disagree with that conclusion. *Webster's Third New International Dictionary* lists at least 13 different senses of the word "with." The majority appears to read "with" in OEC 803(18a)(b) to be "used as a function word to indicate the object of attention, behavior, or feeling." I would read "with" in a different sense of the word, one meaning "in the company of: as companion of." *Webster's Third New International Dictionary* 2626 (3rd ed 1971). The "plain, natural and ordinary meaning" supports either reading.

My reading, however, is supported by the context of the statute. The context of a statute includes other provisions of the same statute. *Sanders v. Oregon Pacific States Ins. Co.,* 314 Or 521, 527, 840 P2d 87 (1992). OEC 803(18a)(a) allows into evidence:

> "A complaint of sexual misconduct made by the witness after the commission of the alleged offense. Except as provided in paragraph (b) of this subsection, such evidence must be confined to the fact that the complaint was made."

Because defendant was charged with abusing both girls, L.'s statements about N. are complaints of sexual misconduct made by a witness, and therefore admissible under OEC 803(18a)(a). L. is also a "child victim." L.'s statements concerned conduct "with" L., because they described abuse of both girls that occurred in L.'s presence during the same period of time. The text and context of OEC 803(18a)(b) reflect an intent to allow this type of hearsay statement if the requirements of reliability and corroboration are met.

The rules of construction that bear directly on how to read statutory text also support my reading of the statute. The majority, fearing to "insert what has been omitted," ends up omitting what has been inserted and runs afoul of the statutory command in ORS 174.010. By refusing to accept a different sense of the word "with," the majority contends that a whole new clause would have to be inserted to deal with the situation in this case. Because ORS 174.010 prohibits the courts from inserting what has been omitted, the majority then concludes that the statute cannot be read to cover this situation. In so doing, the majority rewrites the statute to read, in effect, "statements concerning conduct * * * on the

child," omitting the disputed word "with." However, if one accepts that the "plain, natural and ordinary meaning" of "with" encompasses "in the company of," then nothing need be inserted or omitted. In addition, this reading would also comply with the rule of construction that, in construing a statute, every word should be given effect. *Sanders v. Oregon Pacific States Ins. Co., supra,* 314 at 527.

Because I believe that OEC 803(18a)(b) must be read to allow in the type of evidence that was admitted in this case, I dissent.

Deits, J., joins in this concurrence and dissent.