Argued and submitted February 21, reversed and remanded May 9, 2001

# STATE OF OREGON,
*Appellant,*

*v.*

# JEREMY OWEN BRACKEN,
*Respondent.*

## 98-0899; A104396

23 P3d 417

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Monica L. Finch, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, State Public Defender.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

■ Defendant was charged with murder, ORS 163.115, arising out of a shooting that took place on the front porch of his residence. Defendant contends that he killed the victim in self-defense. The state's theory is that defendant shot the victim in the course of protecting against the discovery of a marijuana growing operation inside his residence, or, in the alternative, that defendant was angry because the victim already had discovered the growing operation. The state moved to introduce evidence of the indoor growing operation, but the trial court denied the motion. The state appeals from that decision. We review the trial court's ruling that the evidence was not relevant for errors of law, *State v. Hampton*, 317 Or 251, 855 P2d 621 (1993), and its determination that the evidence would be unfairly prejudicial for abuse of discretion, *State v. Johns*, 301 Or 535, 557-59, 725 P2d 312 (1986). We reverse.

Except as noted, the following facts were undisputed in the hearing on the state's motion to admit the challenged evidence. Defendant and his roommate, Shelly Walsh, returned home on May 10, 1998, to discover a note on their door from someone who claimed to have information about trespassers on defendant's property. Walsh called the telephone number on the note and spoke to Jake Hayward, defendant's neighbor. Defendant and Walsh agreed to meet with Hayward and Jeff Donner—Hayward's roommate—regarding the trespass. Hayward and Donner knew that Donner's younger brother and a friend had stolen 11 small marijuana plants from defendant's back yard. By contacting defendant, Hayward and Donner meant to return the plants without getting the police involved.

Defendant and Walsh went to Hayward's residence. Hayward and Donner were reluctant to acknowledge that the property taken by Donner's brother was marijuana, and they refused to identify the persons responsible for the trespass and theft. Defendant was angry that Hayward and Donner would not identify the perpetrators, and he and Walsh left. After defendant and Walsh left, Donner and Hayward discussed their options and decided to tell defendant who had stolen the marijuana plants and where the plants had been

stashed. Shortly thereafter, Hayward and Donner approached defendant's house to discuss the matter. Defendant concealed a gun behind his back as he answered the door.

There is a dispute regarding the events that transpired next. The state contends that the evidence will show that Hayward told defendant who had taken the marijuana plants and where they had been stashed. Defendant then threatened Donner and Hayward, stepped back and, as Donner dove off of the porch, shot and killed Hayward. Defendant contends that the evidence will show that Hayward charged at him and threatened him and that defendant shot Hayward in self-defense.

When the police arrived, defendant admitted shooting Hayward but asserted that he had fired the weapon in self-defense. Defendant would not allow police to search his house at the time, but the police arrested him and took him into custody based on the evidence they had recovered and from witness statements. Four days later, police officers interrupted someone breaking into defendant's unoccupied house. The trespasser was attempting to remove marijuana growing materials and marijuana plants from defendant's house. At that time, police discovered the indoor marijuana growing operation. Defendant was charged with multiple drug manufacturing offenses that the state initially attempted to consolidate with the murder count. The trial court denied the state's motion to consolidate the murder charge and the drug charges. Defendant opposed the state's motion in the murder case to admit the drug operation evidence seized from the house.[1]

In the omnibus hearing in which its motion was heard, the state introduced evidence of the indoor growing operation, including growing lamps and approximately 70 marijuana plants, arguing that the evidence would rebut defendant's claim of self-defense to the murder charge. Defendant asserted that the evidence had no logical relevance to the murder charge and should be excluded as improper character evidence under OEC 404(3).[2] The trial

---

[1] In a separate trial, defendant ultimately was convicted on several drug manufacturing charges arising out of the marijuana growing operation.

[2] OEC 404(3) provides:

court excluded the evidence on the ground that it was not relevant under the cumulative five-fold test for relevance set out in *Johns*, 301 Or at 555-56, and because "the probative value of [the] evidence for the purpose it is offered is so tenuous [that] it creates a serious danger of unfair prejudice, confusion of issues and would mislead the jury."

On appeal, the state does not dispute that the challenged evidence fails to satisfy the *Johns* test. However, it renews its argument that the evidence is relevant to prove defendant's motive in killing Hayward. It argues that the proper test for relevance is set out in *Hampton*, 317 Or at 254, and that the *Johns* relevance factors are inapplicable to motive evidence. The state also argues that the probative value of the evidence is not substantially outweighed by any unfair prejudice that might result from admitting it and that OEC 404(4) requires admission of the evidence without balancing its relevance against its potentially prejudicial effect. Defendant responds that *Johns* controls here, that the evidence is not relevant under the *Johns* test, and, even if it were relevant, the trial court did not abuse its discretion in excluding the evidence under OEC 403. Finally, defendant responds that the state's OEC 404(4) argument was not preserved and that Senate Bill 936 (SB 936), from which OEC 404(4) originated, is unconstitutional in its entirety.

■    The first question for decision is whether the trial court erred in determining that the evidence was not relevant. The answer to that question depends on whether the *Johns* test applies to the evidence. In *Johns*, the Supreme Court set forth the determinations a trial judge must make in determining whether "prior crime evidence on the issue of intent or absence of mistake" is relevant:

"(1)    Does the present charged act require proof of intent?

"(2)    Did the prior act require intent?

---

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

"(3)   Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4)   Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5)   Were the physical elements of the prior act and the present act similar?" 301 Or at 555-56.

If the answer to each of those questions is in the affirmative, the trial court must then determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id*. at 556.

In *Hampton*, the Supreme Court employed a less detailed, three-part test to determine the admissibility of uncharged misconduct evidence in general, not limiting its application to evidence offered for a specific purpose in the same way that *Johns* is limited to evidence offered to prove intent or absence of mistake:

" '(1)   The evidence must be independently relevant for a noncharacter purpose [such as, in this case, proof of motive]; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403.' " 317 Or at 254 (quoting *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992)).

This court considered the possible tension between the *Johns* and *Hampton* tests in *State v. Rinkin*, 141 Or App 355, 917 P2d 1035 (1996).[3] There, in a prosecution for attempted sodomy, we employed the *Johns* test to determine whether evidence of the defendant's uncharged sexual misconduct toward other juvenile victims was relevant to prove that the defendant acted with the requisite criminal intent. *Id*. at 368. We concluded that the *Johns* and *Hampton* tests did not conflict, because the first prong of the *Hampton* test incorporated the five *Johns* relevance factors in cases where

---

[3] In *Rinkin*, we referred to the three-part test followed in *Hampton* as being derived from *Johnson*. 141 Or App at 368 n 7. We describe *Hampton* as the source for that test here because, like this case and unlike *Johnson*, it involved uncharged misconduct evidence that was offered as relevant to the defendant's motive.

uncharged misconduct evidence was offered to prove intent. *Id.* at 368 n 7.

We reiterated our understanding of the distinction between the two tests in *State v. Leach*, 169 Or App 530, 9 P3d 755 (2000). In *Leach*, the defendant argued that the trial court had properly excluded prior sexual misconduct evidence in a sex abuse prosecution, because the *Johns* test applied to the state's theory that the evidence was relevant to prove the defendant's "plan" or "preparation" under OEC 404(3). We disagreed.

"Although defendant seems to assume otherwise, *Johns*'s requirements do not apply to all 'non-propensity' bases for admissibility, including those specifically identified in OEC 404(3). *See, e.g., State v. Hampton*, 317 Or 251, 257, 855 P2d 621 (1993) (proof of the defendant's 'parole status,' including fact that there was an outstanding warrant for his arrest for a parole violation, was admissible as relevant to motive in the defendant's trial for assault of a police officer: '[T]he evidence of defendant's parole status tended to prove a relevant, noncharacter purpose that defendant had a motive to assault the officer.'). Rather, *Johns*, by its terms, controls only where 'prior bad acts' evidence is offered to prove intent. *See Johns*, 301 Or at 535. *See also State v. Pratt*, 309 Or 205, 210-11, 785 P2d 350 (1990). Thus, the fact that the proffered evidence does not meet *Johns*'s fourth and fifth requirements does not mean that it is not relevant to 'plan' or 'preparation.'" *Id.* at 536 (footnote omitted).

In short, if uncharged misconduct evidence is not offered to prove intent or absence of mistake, the *Johns* analysis is inapplicable as a basis for determining the relevance of the evidence.

The state argues that the challenged evidence here is not offered to show intent or absence of mistake but that "the parties were agreed that defendant intentionally shot the victim; the only question was why he did so." According to the state, proof of motive is an independent ground for admission under OEC 404(3) and is not subject to the *Johns* test.

Defendant first responds that the primary issue in this case is defendant's state of mind, specifically whether he acted with intent and not in self-defense. That response is

unpersuasive. Defendant assumes that one who acts in self-defense necessarily lacks the requisite intent to commit what would otherwise be a criminal act. However, self-defense does not negate the intent element of a crime; instead, it provides a legal justification for what would otherwise constitute a criminal act. *See State v. Boyce*, 120 Or App 299, 306-07, 852 P2d 276 (1993). The state did not offer evidence of the marijuana growing operation to prove that defendant intentionally shot Hayward.

Defendant asserts, however, that motive and intent are interrelated concepts and that proof of motive is merely an avenue to establishing intent. Defendant relies on *State v. Moen*, 309 Or 45, 786 P2d 111 (1990), and *State v. Davis*, 156 Or App 117, 967 P2d 485 (1998), as examples of cases in which the courts have applied the *Johns* test to determine the relevance of uncharged misconduct evidence offered to prove motive. In *Moen*, the defendant was convicted of aggravated murder. He argued that evidence that he had previously threatened the victim and members of the victim's family with a shotgun during an argument was inadmissible under OEC 404(3). The court held that the evidence was admissible under *Johns*, stating that "[t]his type of evidence has special relevance to the issue of a hostile motive, which in turn is probative of intent." *Moen*, 309 Or at 68.

In *Davis*, the defendant was charged with murder and the state sought reversal of a pretrial order excluding evidence of past abuse of the victim by the defendant. The primary factual dispute in *Davis* was whether the victim shot herself or the defendant shot the victim. The state offered the uncharged misconduct evidence "to prove that [the] defendant killed [the victim] and to disprove that [the victim's] death was self-inflicted." 156 Or App at 124. In evaluating the evidence under the *Johns* analysis, we held that some of the evidence of past abuse was admissible and some was not. We relied, in part, on *Moen*, where "the court held that the trial court correctly applied the *Johns* criteria to evidence about motive, noting that the state had the burden of proving that the defendant's acts were intentional and that evidence of a hostile motive is in turn probative of intent." *Davis*, 156 Or App at 125.

In both *Moen* and *Davis*, unlike in this case, the state offered evidence of prior hostile relations between the victim and the defendant to shed light on the defendant's motive as it bore on the defendant's intent to kill the victim.[4] Accordingly, the nature of the proffered evidence focused on the identity of the victims and the similarity of the uncharged misconduct to the charged offenses. Those focal points coincide with the third, fourth, and fifth factors of the *Johns* test. However, those factors have nothing to do with the challenged evidence in this case. Defendant's marijuana growing operation did not involve an individual victim, nor were the nature and elements of that misconduct similar to an act of homicide. Those discordances exist because the evidence was not offered to prove defendant's intent to kill the victim but, instead, was offered to show a possible reason for defendant's act that rebutted his claim of self-defense. In short, the evidence in this case, unlike in *Moen* and *Davis*, does not involve a convergence between motive and intent but, rather, relates solely to defendant's motive. Therefore, *Johns* is inapplicable.

Other decisions of both the Supreme Court and this court bolster our conclusion. In *Hampton*, the defendant was charged with assaulting a police officer. The defendant denied committing the assault. The state offered evidence that the defendant knew that there was a warrant for his arrest because he had absconded from parole, thus providing a possible motive for the defendant to assault a police officer whom he believed was about to arrest him. In other words, the evidence was offered to show that the defendant had a reason to commit the assault, not to show that he committed the assault intentionally. Accordingly, the court did not use the *Johns* factors to analyze the relevance of that evidence.

---

[4] In *Davis*, the evidence was offered to show primarily that the defendant killed the victim. However, in order to permit that inference, it was necessary to show that the defendant had a motive to kill the victim and, in fact, intended to kill her. We relied in part on *State v. Pyle*, 155 Or App 74, 963 P2d 721, *rev den* 328 Or 115 (1998), as support for use of the *Johns* factors in analyzing motive. We acknowledged that *Pyle* was also concerned with "whether the defendant was able to form the requisite *intent* to murder the victim," and not about whether the defendant committed the act. *Davis*, 156 Or App at 125 (emphasis added).

In *State v. Wieland*, 131 Or App 582, 586, 887 P2d 368 (1994), the state's theory was that the defendant killed the victim to conceal several acts of arson. This court used the *Hampton* test to determine the relevance of evidence that the defendant committed the arsons. As in this case, the evidence would have failed the third, fourth, and fifth factors of the *Johns* test, but we nonetheless concluded that it was admissible to show the defendant's motive to commit murder. *Id.* at 588-89. *See also State v. Hayward*, 327 Or 397, 406-09, 963 P2d 667 (1998) (using *Hampton* test without the *Johns* factors to evaluate evidence that the murder defendant listened to "death metal" music prior to killing convenience store clerk); *State v. Hopkins*, 127 Or App 1, 4, 870 P2d 849, *on recons* 127 Or App 622, *rev den* 319 Or 281 (1994) (using *Hampton* test without the *Johns* factors to evaluate evidence of stolen credit cards in the defendant's possession as motive for defendant's attempt to escape apprehension).

■ Because the challenged evidence in this case was offered to rebut defendant's claim of self-defense and not to show that he intended to kill the victim, we follow the *Hampton* analysis without applying the additional elements of the *Johns* test to determine the relevance of the evidence.

Defendant next asserts that the trial court did not err in excluding evidence of the marijuana growing operation, because it is not admissible even under the *Hampton* test. Defendant does not dispute that the evidence satisfied the second *Hampton* factor. The state offered evidence that the growing operation existed and that defendant was the grower. However, defendant does dispute the applicability of the first and third factors.

He first contends that evidence of the indoor marijuana growing is not "independently relevant for a noncharacter purpose." OEC 401 defines relevant evidence as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." The rule establishes a very low threshold for the admission of evidence. *State v. Titus*, 328 Or 475, 480-81, 982 P2d 1133 (1999); *Hampton*, 317 Or at 255 n 8. The state contends that the evidence helps meet its burden to disprove that defendant acted in self-defense. *See*

*State v. McMullen*, 34 Or App 749, 751-52, 579 P2d 879 (1978) (stating that the state has the burden to prove that the defendant did not act in self-defense). According to the state, "the core issue to be determined by the jury is whether defendant acted out of necessity, or whether he acted because of more self-serving motives when he shot and killed the victim." We agree with the state that evidence that defendant had a much larger growing operation inside his house than the few plants stolen from outside the house tends to show that defendant had a high-stakes motive to guard against the discovery and looting of the operation by others or its disclosure to authorities. The evidence was relevant to show that defendant had a motive to protect the operation from anyone, including Hayward, whom he perceived as a threat to its security.

■       The final step of the *Hampton* analysis, like the *Johns* test, requires weighing the probative value of the proffered evidence against the risk of unfair prejudice to the defendant. OEC 403. Here, the trial court concluded "that the probative value of this evidence for the purpose it is offered is so tenuous it creates a serious danger of unfair prejudice, confusion of issues and would mislead the jury." We need not decide whether the trial court abused its discretion in making that determination, if the state is correct in asserting that OEC 404(4)[5] prohibits the use of a balancing test. Accordingly, we first consider the application of OEC 404(4) in this case. The state argues that the challenged evidence is admissible as a matter of law under OEC 404(4) because it is relevant. Defendant responds that the state did not preserve its argument in the trial court, and that even if it had, SB 936, from which OEC 404(4) originated, is unconstitutional in its entirety.

---

[5] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a)  [OEC 406 through OEC 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b)  The rules of evidence relating to privilege and hearsay;

"(c)  The Oregon Constitution; and

"(d)  The United States Constitution."

Ordinarily, we will not consider claims of error that were not preserved in the trial court. *See* ORAP 5.45(2). The preservation requirement is important for reasons of judicial efficiency and fairness. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). The Supreme Court has explained that "it is essential to raise the relevant issue at trial, but less important to make a specific argument or identify a specific legal source with respect to the issue raised." *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998). Here, the state relied on OEC 404(4) in its memorandum in support of its motion to admit the drug operation evidence. It quoted the full text of the rule and argued that it must be applied to any evidence that the court determines is relevant under OEC 401. In doing so, the state identified both the *issue* and *source* of authority on which it now relies, namely, that relevant evidence is admissible under OEC 404(4), subject to the limitations of that rule. Although in its memorandum the state did not make the specific argument that OEC 404(4) precludes balancing under OEC 403, what it did argue was sufficient for purposes of preservation on appeal. *See State v. Hill*, 129 Or App 180, 186, 877 P2d 1230 (1994) (raising issue and source of position at trial, but not the specific argument made on appeal, was sufficient to preserve claim of error). *See also State v. Dibala*, 161 Or App 99, 106-07 n 3, 984 P2d 302 (1999) (noting that where the state had "incorporated OEC 404(4) in its entirety" in a memorandum to the trial court and "also cited OEC 404(4) at the pretrial hearing," it had identified the issue and cited the source sufficiently for preservation purposes).

We turn to the merits of the state's argument. Our decision in *State v. Fugate*, 154 Or App 643, 963 P2d 686, *on recons* 156 Or App 609 (1998), *rev allowed* 328 Or 275 (1999), forecloses defendant's argument that SB 936 is unconstitutional in its entirety. Moreover, we have already held in *Leach* that OEC 404(4) precludes the use of "balancing" under OEC 403 to exclude relevant evidence.[6] *Leach*, 169 Or App at 537. Because there is no basis in the record for the trial court to have engaged in a balancing analysis, the court

---

[6] Defendant does not argue that either the state or federal constitution requires balancing under OEC 403. *See* OEC 404(4)(a).

erred in denying the state's motion to admit the challenged evidence.[7]

Reversed and remanded.

---

[7] We close with a note of caution. Although pretrial motions to admit or exclude evidence "may serve a valuable function in some cases, a trial court is always free to revisit a pretrial ruling if the facts or theory presented pretrial develop into something else at trial." *Id.* at 539 (De Muniz, J., concurring). We have decided only that which is properly before us.