Argued and submitted October 29, 2010, affirmed January 5, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RONALD MARCUS LEISTIKO,
*Defendant-Appellant.*

Washington County Circuit Court
C072939CR; A141169

246 P3d 82

Meredith Allen, Senior Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services. Ronald Marcus Leistiko filed the supplemental brief *pro se.*

Linda Wicks, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals from a judgment of conviction, including, *inter alia*, convictions for first-degree rape, first-degree sexual abuse, and prostitution.[1] We reject without discussion each of defendant's assignments of error, except for his challenge to the trial court's admission of uncharged misconduct evidence involving defendant's sexual assault against a different victim. Because the challenged evidence was relevant to rebut defendant's theory that the victims in this case consented to sexual activity with defendant, and the trial court was not required, in response to defendant's generalized due process objection, to engage in the balancing provided for by OEC 403, we affirm.

Defendant was charged with the forcible rape of three women. In his opening statement at trial, defendant's attorney told the jury that the evidence would show that the victims consented to sexual activity with defendant. After the victims testified, the state proffered evidence that defendant had forcibly raped a fourth woman, SC, to show that (1) defendant intended to forcibly rape the instant victims or alternatively, (2) defendant had developed a method of using Internet advertisements to contact women and arrange private meetings with them for intimate activities—meetings that would result in nonconsensual sexual activity.

Shorn of unnecessary detail, the evidence showed that, during the period between late 2006 and the summer of 2007, defendant had contacted each of the three victims by responding to their Internet advertisements for various "erotic services." In each instance, the evidence showed that defendant forcibly raped those victims at his residence after they declined his requests for consensual sexual intercourse. After all of the named victims testified, the state presented SC's testimony in an offer of proof. SC testified that she

---

[1] Specifically, the convictions were for two counts of first-degree rape, ORS 163.375; one count of first-degree sexual abuse, ORS 163.427; one count of strangulation, ORS 163.187; one count of fourth-degree assault, ORS 163.160; four counts of prostitution, ORS 167.007; one count of delivery of a controlled substance to a minor, ORS 475.995; one count of second-degree kidnapping, ORS 163.225; one count of attempted first-degree rape, ORS 163.375; one count of furnishing alcohol to a minor, ORS 471.410; one count of stalking, ORS 163.375; and one count of harassment. ORS 166.065(1)(c).

formerly gave massages in her home and that she had advertised that service in the "erotic services" section of an Internet website between March and December 2007. She had training in "basic therapeutic" and "specialty massages" but, because she was not a licensed massage therapist, she was prohibited from advertising in the "massage" section of the website. Although SC advertised in the "erotic services" section of the website, her advertisements always stated, in commonly understood terms, that she would not engage in sex for money.

Defendant responded to one of SC's advertisements in July 2007. Defendant scheduled a massage at SC's home, for which he agreed to pay. After SC began to massage defendant, he repeatedly asked her for, and she repeatedly refused to perform, sexual acts. Defendant then forcibly raped her.

■ After making the offer of proof, the prosecutor argued that SC's testimony was relevant to show that defendant intentionally raped the named victims. Defendant objected, arguing that the evidence did not satisfy the test for admission of uncharged misconduct evidence to show intent set out in *State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986).[2] In particular, defendant argued that the uncharged misconduct was insufficiently similar to the instant crimes because, unlike the named victims, SC was not a sex worker and, unlike the attacks on the named victims—which occurred in defendant's home—the attack on SC occurred at

---

[2] In *Johns*, the court established a multipart inquiry to determine whether uncharged misconduct is relevant to intent in a charged crime:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

301 Or at 555-56.

her residence. Defendant also argued, on due process grounds, that the evidence was unfairly prejudicial. The trial court admitted the evidence on the ground that it was relevant to counter the defense theory that the victims had consented to having sex with defendant. The court also implicitly rejected defendant's due process argument. The jury ultimately convicted defendant of raping two of the three alleged victims.

Defendant renews his arguments on appeal. In doing so, he amplifies the due process argument that he made before the trial court into a more particularized objection, under OEC 403, that the court erred in failing to balance the probative value of the challenged evidence against its unfairly prejudicial effect.

As a general proposition, evidence of a defendant's uncharged misconduct is not admissible in a criminal case to prove the defendant's criminal propensities. OEC 404(3). However, such evidence may be admissible to prove other facts that are relevant in the case, as long as the chain of logical relevance connecting the evidence to the "other" fact or facts does not ultimately rely on an inference relating to the defendant's character or propensities. *State v. Pinnell,* 311 Or 98, 105 n 11, 806 P2d 110 (1991) (OEC 404(3) "provides an avenue for admitting evidence that proves guilt without any inference to character"). OEC 404(3) is an "inclusionary" rule. *State v. Johnson,* 340 Or 319, 338, 131 P3d 173 (2006). As the court explained in *Johnson,*

> "[t]hat means that, while the rule sets out a list of possible 'exceptions' to the general prohibition on prior bad act evidence ('motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident'), the rule does not purport to cover every imaginable purpose to which prior bad act evidence might logically and lawfully be applied. Thus, the essential inquiry under OEC 404(3) is not whether the testimony can be made to fit into one of the listed categories, but when and how it is logically relevant to a noncharacter issue in the case."

*Id.* (citations omitted).

OEC 401 defines "relevant evidence" as evidence "having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 404(3) does not require the state to establish that the evidence demonstrates a distinctive methodology, or even that the uncharged acts closely replicate the crimes that are the subject of the indictment against defendant such as would be required to admit evidence of other wrongful acts in order to prove the identity of the perpetrator. *Johnson*, 340 Or at 340. Nonetheless,

> "any similarity in the circumstances increases the probative value of the prior crime evidence and enhances the argument for admissibility under OEC 404(3). Likewise, the timing of uncharged crimes *vis-à-vis* the charged crime and the number of instances that are shown may affect the question of admissibility. No categorical rule exists, but timing, repetition, and similarity of both the act and the surrounding circumstances all are important considerations."

*Id.*

■ In *Johnson*, the court held admissible the testimony of four witnesses that the defendant had sexually abused them after incapacitating them with intoxicants. The court explained that

> "[t]he testimony of those witnesses demonstrated that defendant had developed a method for obtaining sexual access to women without their consent (which method involved administration of incapacitating drugs, commonly liquid morphine) and permitted the jury to infer that the victim, like others, had not consented to the sexual contact with defendant * * *."

*Id.* at 341. That holding demonstrates the general proposition that evidence of a defendant's uncharged misconduct can be probative regarding the issue of whether an alleged victim consented to sexual contact with the defendant.

More recently, in *State v. Momeni*, 234 Or App 193, 227 P3d 1230, *rev den*, 348 Or 523 (2010), we applied the foregoing principles to circumstances that are analogous to the circumstances here. In *Momeni*, we held that the defendant's sexual misconduct toward two female tenants, R and K, was admissible to show that the victim in the subject case, who

also was the defendant's tenant, had not consented to engage in sexual acts with the defendant. We observed that, if the evidence was probative of nothing except

> "to show that defendant is the kind of man who sexually attacks women, then the legislature clearly intends that the evidence be excluded. On the other hand, if the evidence is consistent with the legislature's intent to authorize the admission of prior bad acts evidence that is probative of other disputed fact issues, then the testimony should be admitted to fulfill the legislature's intention."

*Id.* at 201. Apropos of the facts at hand, we held:

> "Here, as in *Johnson*, there is no requirement under OEC 404(3) that evidence of defendant's prior wrongs demonstrate a distinctive methodology or a signature crime. However, it is essential that the uncharged crimes evidence support the narrow inference that the state seeks to draw from it. *Johnson*, 340 Or at 340. In this case, R's and K's testimony demonstrates defendant's method of manipulating his landlord-tenant relationship with other female tenants to place them in circumstances where they were vulnerable to his sexual advances. In *Johnson*, the evidence 'demonstrated that defendant had developed a method for obtaining sexual access to women without their consent[.]' 340 Or at 341. The evidence regarding other victims in *Johnson* permitted the jury to properly infer that the victim, like other victims, had not consented to the sexual contact with the defendant. In this case also, the trier of fact could properly infer that B, like R and K, had not initiated or consented to defendant's sexual advances as defendant argued, but rather, as he did with R and K, defendant used the leverage of his landlord relationship to put B in a position where she was alone and vulnerable to his sexual advances. It follows that the trial court did not err in admitting their testimony under OEC 404(3) as relevant to and probative of the issues of B's credibility and whether she initiated or consented to defendant's sexual contacts with her."

*Id.* at 202.

Defendant argues that *Momeni* is distinguishable because,

> "[i]n *Momeni*, the particularly probative details consisted of evidence that the defendant 'used the leverage of

his landlord relationship to put B in a position where she was alone and vulnerable to his sexual advances.' *Id.* at 202. Here, however, defendant used generic methods under a variety of circumstances geared toward a variety of victims. There is no shared distinctiveness that allows the evidence to be probative of a narrow, non-propensity inference. The evidence here only tends to show that defendant is the kind of person who has a propensity to bad acts."

We disagree with defendant's analysis. As in *Momeni*, the challenged evidence here countered a defense theory that the named victims consented to having sexual activity with defendant. Accordingly, it satisfied the threshold test of basic relevance under OEC 401. The evidence also was sufficiently probative of a rational inference that did not rely on defendant's criminal character or propensity. In this case, the inference that the state asked the jury to draw from the challenged evidence was that, during the period from late 2006 through the summer of 2007, defendant established a method of using Internet advertisements to contact women and arrange meetings with them in private for intimate activities that resulted in nonconsensual sexual activity.

The particular circumstantial differences between the charged acts and the uncharged misconduct that defendant emphasizes, namely that SC was not a paid sex worker and that defendant's attack on SC occurred in her apartment, not defendant's home, do not detract from the reasonableness of that inference. In each instance, defendant responded to an Internet advertisement for erotic services and met with the women in a private location that was conducive to the perpetration of nonconsensual sexual attacks. In each instance, defendant attempted to obtain consensual sexual favors from the women, and when those efforts failed, he resorted to force. The inference that the state posits from those common circumstances is sufficiently strong that the more precise fact matching upon which defendant insists is not required.[3] In short, the challenged evidence was admissible to support the victims' credibility and to rebut defendant's claim that the victims had consented. *See Momeni*, 234

---

[3] Because the trial court did not admit the evidence to show defendant's intent, it is not necessary to consider whether the challenged evidence also satisfied the *Johns* test. *See State v. Bracken*, 174 Or App 294, 300, 23 P3d 417, *rev den*, 333 Or 162 (2001) ("[I]f uncharged misconduct evidence is not offered to prove intent or

Or App at 202 (concluding that disputed evidence was "relevant to and probative of the issues of [the victim's] credibility and whether she initiated or consented to defendant's sexual contacts with her").

■ Furthermore, the trial court did not err in failing to exclude the evidence based on defendant's generalized due process challenge to its admission. Assuming that defendant's objection was adequate to preserve his argument on appeal that the trial court erred in failing to exclude the evidence under OEC 403, we have previously rejected arguments that such balancing is required by due process under the Fifth and Fourteenth Amendments to the United States Constitution. Under OEC 404(4), in a criminal case, a trial court cannot engage in OEC 403 balancing unless such balancing is required by the state or federal constitution. *State v. Wyant*, 217 Or App 199, 204-06, 175 P3d 988 (2007), *rev den*, 344 Or 558. Due process does not require such balancing here. *State v. Pitt*, 236 Or App 657, 664, 237 P3d 890 (2010); *State v. Coen*, 231 Or App 280, 285, 220 P3d 423 (2009), *aff'd sub nom State v. Moore/Coen*, 349 Or 371 (2010).

Affirmed.

---

absence of mistake, the *Johns* analysis is inapplicable as a basis for determining the relevance of the evidence.").