Submitted January 20, 2016, affirmed April 12, petition for review denied August 3, 2017 (361 Or 800)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WAYNE RAYMOND HAGNER,
*Defendant-Appellant.*

Coos County Circuit Court
13CR0973; A156340

395 P3d 58

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Eric Johansen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

### SERCOMBE, P. J.

Defendant appeals a judgment of conviction for murder, ORS 163.115, for intentionally shooting the victim, his wife, raising five assignments of error. We write to address defendant's first and second assignments of error, in which he contends that the trial court erroneously admitted prior acts evidence that, in the week before the crime, defendant (1) angrily yelled at the victim when she had locked him out of their house during a dispute and (2) slapped the victim during another dispute.[1] Defendant argues that the evidence should not have been admitted under OEC 404(3),[2] because it was not relevant for any purpose other than to show defendant's propensity to engage in bad conduct. The state responds that the evidence was properly admitted to show defendant's hostile motive and his intent to shoot the victim. We affirm.

"We evaluate the denial of a. defendant's motion to exclude evidence of other acts in light of the record made before the trial court when it [made its decision]." *State v. Wright*, 283 Or App 160, 162, 387 P3d 405 (2016) (brackets in original; internal quotation marks omitted). We review the trial court's ruling on the relevance of evidence for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

One afternoon, defendant called his friends Juanita and Otto Vernon Epping-Fate on the phone. Defendant sounded distressed, and the Epping-Fates decided to go to defendant's house to make sure he was okay. When they arrived, defendant met them at the door, and they went inside and sat down on the couch in the living room. The victim was in the living room with defendant.

Defendant was anxious and nervous. He walked around the house, periodically sitting down but almost

---

[1] We reject defendant's third, fourth, and fifth assignments of error without discussion.

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

immediately getting back up, and, when Juanita spoke to him, he would repeatedly say the last word she said back to her. The Epping-Fates prayed with defendant, which calmed him down for a moment, but he soon became agitated again. Juanita, who was a retired nurse and had worked in a mental health unit, was concerned that defendant was having a medical or mental health crisis and asked to take him to the hospital.

Defendant asked what they would "do to [him]" at the hospital, and, after Juanita assured him that they would help him to settle down, he agreed to go. The victim, intending to go with them, said that she was going to get her coat, purse, and shoes and left the living room and went through the kitchen into the bedroom. After she left, defendant sat down at a desk. When the victim exited the bedroom a few minutes later, Juanita noticed that defendant was holding a gun. Still sitting at the desk, defendant fired a shot between his feet. Juanita called to Otto that they should go, and she ran out of the house. As she was leaving, she saw defendant raise the gun.

Otto did not leave the house with Juanita, and he saw defendant fire the gun a second time. After defendant fired the second shot, he told Otto that he "should go now." Otto could not see the victim from where he was sitting, and he asked defendant if she was okay. Defendant said that she was fine, and Otto left and drove home with Juanita. When they arrived at their home, Juanita called the police.

North Bend Police Sergeant Young responded to defendant's house. When he arrived, defendant was standing outside the front door. He approached defendant and asked how defendant was and whether he had fired a gun into the floor. Defendant responded that he was fine and that he had not fired a gun. Young also asked defendant if he had been having any mental health issues, and defendant responded that he had not. Young thought that defendant appeared to be "visibly unnerved" and "anxious." Further, he was concerned because defendant had a spot of dried blood on his nose but had no visible wound.

Young also found it unusual that the victim had not come out of the house since he had arrived. Young knew the

victim, and he thought it was out of character for her not to come to the door when someone arrived at the house. Young asked defendant if the victim was home, and defendant responded that she had gone out and he did not know where she was.

Young walked up to the screen door of the house and repeatedly called out to the victim, but he got no response. When Young approached the door, defendant became more anxious and agitated. Young decided to enter defendant's house to perform a welfare check of the victim, leaving defendant with a backup officer. As Young opened the door, defendant asked if Young "need[ed] a search warrant," and Young responded that he did not under the circumstances.

Inside the house, Young discovered the victim lying face down in a pool of blood in the kitchen. She was still warm, but she had no pulse and was not breathing. Young then went back outside and placed defendant under arrest. Defendant was subsequently indicted for murder and felon in possession of a firearm.

Defendant moved to exclude certain evidence, including the prior acts evidence that he challenges in this appeal: testimony from his next door neighbor, Anderson, and his daughter, Courtney. Anderson heard an altercation between defendant and the victim four days before the shooting. She heard defendant outside of the house that he lived in with the victim, "screaming at her" because "[h]e had been locked out." Anderson had set up a camera to record the incident and then left the room. One week before the shooting, Courtney also overheard an altercation between defendant and the victim. She heard a slapping sound and the victim say, "You slapped me," to defendant.

Defendant argued, both in the memorandum supporting his motion and at the pretrial hearing, that evidence of both of those incidents was not admissible under OEC 404(3), because it was not relevant to any nonpropensity purpose. Defendant conceded that he had shot the victim, but argued that he had done so accidentally, rather than intentionally. As to Anderson's testimony, defendant contended that the evidence was not relevant to rebut defendant's position that he had accidentally shot the victim because the

evidence was "basically saying, 'You yelled at your wife. You yell all the time at your wife.'" Defendant asserted that that was not relevant to show "that you intended, on this one occasion, to take a pistol out and shoot her in the head and kill her." Similarly, defendant asserted that Courtney's testimony was also not relevant to his intent, because the fact that defendant had slapped the victim during an argument did not make more probable that he had intentionally, rather than accidentally, shot her in the head.

In response, the state argued that evidence of both prior acts was relevant to show that defendant had acted with the requisite intent when he shot the victim, relying on our decision in *State v. Davis*, 156 Or App 117, 967 P2d 485 (1998). In *Davis*, the defendant was charged with the murder of his wife. The defendant's theory was that he had not killed the victim, but that she had instead committed suicide. The state offered evidence of several incidents of prior domestic violence by the defendant against the victim to rebut the defendant's suicide theory and to prove that the defendant had intentionally shot the victim. 156 Or App at 124-25. We explained that, under *State v. Moen*, 309 Or 45, 786 P2d 111 (1990), and *State v. Pyle*, 155 Or App 74, 963 P2d 721, *rev den*, 328 Or 115 (1998), evidence of prior acts of aggression against the victim could be used to prove the defendant's hostile motive against the victim and intent to commit the charged act, but only if the evidence satisfied the multifactor test from *State v. Johns*, 301 Or 535, 725 P2d 312 (1986).[3] *Davis*, 156 Or at 125. We then concluded that

---

[3] The *Johns* court set out the following test:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

301 Or at 555-56.

some of the past acts of violence against the victim were admissible because they met the *Johns* test, and some of them were inadmissible, because they did not satisfy that test. *Id.* at 125-26.

Here, the trial court ruled that the prior acts evidence was admissible, apparently relying on *Davis*. Defendant then pleaded guilty to the felon in possession charge, and proceeded to a jury trial on the murder charge. The jury found defendant guilty of murder, and the trial court entered a judgment of conviction.

On appeal, defendant contends that the prior acts evidence should not be admitted because it is not relevant to any nonpropensity purpose. According to defendant, because the evidence was offered to rebut the defense theory that he had killed the victim accidentally, it was not admissible unless the state met the test established in *Johns*. Defendant insists that, because the evidence did not satisfy that test, it was mere propensity evidence and inadmissible under OEC 404(3). The state responds that the prior acts evidence in this case was relevant under OEC 404(3) to prove defendant's hostile motive towards the victim, which, in turn, was probative of his intent. The state further argues that, because the evidence was relevant to hostile motive, the *Johns* test need not be applied. We agree with the state on both points.[4]

_____

[4] Because we agree with the state that the evidence was admissible to show motive and intent under OEC 404(3), we do not address the state's alternative argument that the evidence was otherwise admissible under OEC 404(4). *See* OEC 404(4) (providing that, "[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by * * * (c) The Oregon Constitution; and (d) The United States Constitution"). As we explained in *State v. Clarke*, "[a]lthough [the Supreme Court in *State v.] Williams* [, 357 Or 1, 24, 346 P3d 455 (2015),] held that OEC 404(4) 'supersedes' OEC 404(3), the types of relevant evidence set out in OEC 404(3) ('motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident') remain viable theories for the admission of prior acts evidence." 279 Or App 373, 382, 379 P3d 674 (2016) (citing *State v. Turnidge (S059155)*, 359 Or 364, 434, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017) (*Turnidge*)). "Thus, in evaluating whether evidence of 'other crimes, wrongs or acts' is admissible for nonpropensity purposes, we may draw on the 'settled principles' of relevance embodied in OEC 404(3) and case law construing that provision." *Id.* (quoting *Turnidge*, 359 Or at 434); *see also Wright*, 283 Or App at 164 n 1 (same); *State v. Tena*, 281 Or App 57, 63, 384 P3d 521 (2016) (same). Our conclusion that the challenged evidence was relevant under OEC 404(3) to show motive and intent obviates the need to address its admissibility under OEC 404(4).

As noted, the evidence in this case was offered to prove defendant's hostile motive—that defendant's past acts of hostility toward the victim tended to show that he desired to harm her and, therefore, was more likely to have intentionally shot her. In some cases, both this court and the Supreme Court have applied the *Johns* test to prior acts evidence offered under a hostile-motive theory, concluding that such evidence was admissible only if it was sufficiently similar to the charged criminal conduct. *See, e.g., Moen,* 309 Or at 69; *State v. Blaylock,* 267 Or App 455, 466-68, 341 P3d 758 (2014), *rev den,* 357 Or 299 (2015); *State v. Yong,* 206 Or App 522, 541-43, 138 P3d 37, *rev den,* 342 Or 117 (2006). *Davis,* 156 Or App at 124-26, on which the prosecutor and the trial court relied, is representative of that trend.

But while prior similar acts can be used to prove hostile motive, that proof is not the exclusive means to do so. The Supreme Court recently clarified that the *Johns* test is specifically tailored to prior acts evidence offered under the "doctrine of chances theory," and that it applies *only* when evidence is offered under that theory. *See State v. Turnidge (S059155),* 359 Or 364, 435, 374 P3d 853 (2016), *cert den,* ___ US ___, 137 S Ct 665 (2017) (*Turnidge*) ("[T]he particular analytical framework outlined in [*Johns*] was specifically fashioned to determine the relevancy and admissibility of evidence offered to prove a defendant's 'intent or absence of mistake' under the theory of the doctrine of chances[.]"). The doctrine of chances is a theory of relevance for establishing a defendant's intent where prior acts evidence is offered in support of the inference that, because "the defendant ha[s] committed similar past acts with sufficient frequency * * *[,] it becomes increasingly unlikely—with each new act committed—that he committed the [charged] act inadvertently or by accident." *Id.* at 436-37.

Although evidence offered to prove hostile motive is also probative of intent, its relevance does not depend on the doctrine of chances. Rather, "[e]vidence that shows a hostile relationship existed between a defendant and his victim tends to shed light on a defendant's *mens rea*" because that evidence tends to show that the defendant acted with the conscious objective of harming the victim when the charged incident occurred. *Moen,* 309 Or at 68; *see also Turnidge,*

359 Or at 437 (evidence of motive tends to show that the defendant acted intentionally, in the sense that the defendant "acted 'with a conscious objective to cause the result or engage in the conduct so described'" (quoting ORS 161.085(7)); *State v. Woods*, 284 Or App 559, 562-63, 393 P3d 1188 (2017) (evidence of prior uncharged sexual conduct against victim admissible to show sexual predisposition and need not be justified by the doctrine of chances); *State v. Clarke*, 279 Or App 373, 385, 379 P3d 674 (2016) (evidence that the defendant threatened the victim with a baseball bat seven to 10 days before the victim was bludgeoned to death with a baseball bat tended to show both that the defendant killed the victim and that he did so intentionally). Similarly, as the court explained in *Wright*, 283 Or App at 169-70, where the state offered evidence of the defendant's hostile motive towards the complainant to rebut the defendant's "assert[ion] that he had caused the complainant's injuries by accident," the *Johns* test did not apply, because "the court did not admit the evidence * * * under a doctrine-of-chances theory." Put another way, the doctrine of chances can only be used to prove a defendant's intent in the sense of absence of mistake or accident, but a defendant's absence of mistake or accident can still be proven by nondoctrine-of-chances theories, including hostile motive.

Accordingly, because the relevance of hostile-motive evidence does not depend on whether the past hostility resulted in similar criminal conduct as the charged conduct in the case, *Johns* does not apply to hostile-motive cases. Thus, contrary to defendant's argument, we reiterate our conclusion in *State v. Tena*, 281 Or App 57, 71, 384 P3d 521 (2016), that, "[i]n the present case, the trial court held that the evidence was admissible * * * to show defendant's 'hostile motive,'" and, because "[t]hat theory of admissibility did not rely on the doctrine of chances," *Johns* does not apply.[5]

We still must determine whether the evidence of the two incidents that the state offered as prior acts evidence was, in fact, properly admitted to show defendant's hostile

---

[5] For those reasons, to the extent that the trial court relied on the portion of *Davis* that applies *Johns* to hostile-motive evidence, the trial court was incorrect, and, in light of *Turnidge*, those portions of *Davis* are no longer good law.

motive. As noted above, evidence of a defendant's past hostility toward the victim can be relevant to show that, when the charged act occurred, the defendant intentionally harmed the victim. *Moen*, 309 Or at 68; *Clarke*, 279 Or App at 385. Evidence is relevant if it has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable tha[n] it would be without the evidence.'" *State v. Barone*, 328 Or 68, 86, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000) (quoting OEC 401). When considering prior acts evidence offered for motive, we must ensure that the state has proven that there is "'some substantial connecting link'" between the prior acts and the charged crime. *Wright*, 283 Or App at 171 (quoting *Turnidge*, 359 Or at 451). To determine whether the state has met that burden, we evaluate "'the contested evidence in light of the circumstances of the crime[].'" *Id.* at 172 (quoting *Turnidge*, 359 Or at 451). We conclude that evidence of both of the prior acts was relevant to defendant's hostile motive and to show that he intentionally shot the victim and, thus, was properly admitted.

The prior acts evidence tended to show that defendant had a hostile relationship with the victim in the week immediately preceding the shooting. Courtney's testimony related a physical assault (slapping the victim) a week before the shooting. Anderson's testimony revealed that the victim had locked defendant out of their home during a dispute, and that defendant had yelled at the victim in an attempt to get her to let him inside, four days before the shooting. In both of those incidents, defendant had become angry and lashed out toward the victim. Defendant's hostility toward the victim had at least some tendency to show that he intentionally shot her, because a jury could find that he had been motivated by the same animosity when he fired the fatal shot. *See Clarke*, 279 Or App at 385 (explaining that evidence of prior threats toward the victim "tended to show that defendant's animosity toward the victim was so strong that he was moved to engage in violence against him"); *State v. Teitsworth*, 257 Or App 309, 320-21, 304 P3d 793, *rev den*, 354 Or 342 (2013) (concluding that evidence of the defendant's prior acts of domestic violence against the victim was relevant in an assault case to rebut his self-defense claim

because it tended to show that the defendant had a "hostile motive toward the victim," which made it more likely that he acted with the specific intent to harm the victim); *Yong*, 206 Or App at 542-43 (same).

A jury could find that same animosity motivated defendant because the prior hostile acts were connected temporally with the crime. In *Wright*, 283 Or App at 177-78, we concluded that evidence that the defendant had threatened to kill the victim a "few years" before assaulting her was not relevant to hostile motive to assault the victim when the charged conduct occurred. We reached that conclusion because the state had failed to produce any evidence of a "substantial connecting link" between the prior threat and the charged assault, either by providing context to explain what the defendant's motivation was for threatening the victim or by explaining why the defendant's hostility was "likely to persist until, or recur on, the date of the charged crime and motivate the commission of that crime." *Id.* at 176-77. The state therefore failed to carry its burden of showing "that the hostility that caused the threat also motivated the charged assault." *Id.* at 178.

Here, in contrast, the prior acts occurred so close in time to the shooting—one week and four days beforehand, respectively—that a jury could infer that defendant's hostility toward the victim persisted until the time of the shooting and also motivated that crime. *See State v. Salas-Juarez*, 349 Or 419, 428-29, 245 P3d 113 (2010) (concluding that evidence that Russell, a person other than the defendant, had wanted to "slash" someone during an altercation earlier on the night of the charged incident was relevant to show that Russell, rather than the defendant, had stabbed the victim to death later that same night, because "[o]ne inference that the jury was entitled to draw from [that evidence] * * * was that Russell was in an angry frame of mind on the night in question"). Additionally, the fact that there were two incidents a few days apart—rather than an isolated incident—made it all the more likely that defendant's hostility did not dissipate in the four days separating the second prior act and the shooting. *See id.* (explaining that evidence that Russell had later recruited the defendant and instigated a fight led to a reasonable inference "that Russell's [angry]

state of mind was an ongoing one"). Thus, the state established a "substantial connecting link" between the prior acts evidence and the shooting and thereby met its burden to show that there was at least some likelihood that the same hostility that motivated the prior acts also motivated the shooting, and the evidence of both of the prior acts was relevant to defendant's hostile motive and, in turn, his intent.

Defendant also argues that the trial court erred in admitting the evidence without balancing its probative value against its prejudicial effect under OEC 403. However, defendant did not request that the trial court conduct OEC 403 balancing in his written motion, at the pretrial hearing, or when either Anderson or Courtney testified during the trial; his OEC 403 argument is therefore unpreserved. *See Turnidge*, 359 Or at 430 (explaining that the trial court must conduct OEC 403 balancing before admitting prior acts evidence "in response to a proper motion"); *Clarke*, 279 Or App at 391 (defendant did not preserve request for OEC 403 balancing where he failed to request balancing at the pretrial hearing or when the evidence was presented to the jury). Moreover, defendant does not request that we review the court's failure to conduct balancing for plain error, and, even if he did, the court's failure to conduct unrequested OEC 403 balancing is not plain error. *See Tena*, 281 Or App at 74-75 (explaining that the *Turnidge* court's statement that OEC 403 balancing is required only "'on a proper motion' *** precludes defendant's contention that the trial court plainly erred in not balancing in this case, where he did not request balancing," because, "at a minimum, it is not beyond dispute that *** where defendant did not request balancing, the court erred in not conducting it").

Accordingly, we conclude that the challenged prior acts evidence was relevant to the issue of hostile motive and, in turn, defendant's intent when he shot the victim. Additionally, defendant did not preserve his argument that the trial court failed to conduct OEC 403 balancing. The trial court therefore did not err in denying defendant's motion to exclude the prior acts evidence.

Affirmed.