AOYAGI, J.
*58 Defendant was charged with assault in the fourth degree, ORS 163.160, for allegedly punching his ex-girlfriend on August 5, and with criminal mischief in the second degree, ORS 164.354, for allegedly damaging property at his ex-girlfriend's apartment on August 6. A jury convicted him of assault and acquitted him of criminal mischief. On appeal, defendant assigns error to the trial court's denial of his request for a limiting instruction. The requested instruction would have told the jury not to rely on evidence of defendant's acts on August 6 to infer defendant's guilt of the alleged assault on August 5. For the reasons that follow, we agree with defendant that the trial court erred in concluding that the evidence was admissible as intent or motive evidence under OEC 404(3) and in refusing to give the requested instruction on that basis. Accordingly, we reverse and remand the assault conviction and otherwise affirm.[1]
DEFENDANT'S TRIAL
Given the posture of this case, we summarize the relevant evidence offered by both the state and defendant at trial, noting any factual *426 disputes, rather than stating the facts in the light most favorable to one party. Evidence for which the source is not identified indicates an uncontested fact in the trial evidence.
Defendant and A are former romantic partners who have a son together. In early June, A accepted an offer to deploy to Guantanamo Bay with the Coast Guard Reserves. Expecting to depart soon, A asked defendant to move into her apartment to care for their son, which defendant did in late June. She and defendant shared a bed and were "intimate" after he moved in but did not resume a romantic relationship. Soon, A learned that she was not deploying after all. As a result, defendant planned to move out once he found other housing. Defendant was still living in A's apartment in early August, however, when A returned from a three-week-long Coast Guard training.
*59 According to the state's evidence, on August 5, defendant implied that he wanted to have sex with A, but A was not interested, and defendant "started yelling and getting upset" and told A that "he was going to have sex with [her] whether [she] wanted to or not." A left the apartment and walked around the block. When she returned, defendant was still there, and she asked him to leave, but he refused. She and defendant "started getting in a fight," and, at some point, defendant "got on top of" A on the bed and punched her in the lip. A was not sure whether defendant intended to hit her or a pillow, but she "got punched."
According to defendant's evidence, defendant never punched A on August 5. Defendant did not punch her and was not even in the apartment at the time of the purported fight-he was at school. Defendant does not know how A injured her lip.
A spent the night of August 5 at a friend's house. She sent a text message to defendant saying that he could stay that night at the apartment and then needed to find "somewhere else to go."
The next morning, August 6, A returned to the apartment after defendant had left. A gathered defendant's belongings, put them on the porch, and texted defendant to come pick them up. Defendant, who did not have a key, arrived that evening. In a text message, he asked A to let him inside to use the bathroom. A responded that she was not home, even though she was, because she "didn't want him to try to get in the house."
According to the state's evidence, defendant banged on the apartment door until he broke through it. A ran outside. Defendant then entered the apartment, smashed a $1,000 television that belonged to A, stuck a steak knife in a $300 painting that belonged to A, and damaged a window in the apartment. After defendant left, the police arrived and documented the damage.
According to defendant's evidence, defendant was angry and was pushing on the door in the hopes that it would open, but he did not mean to break the door. Defendant damaged the television, but it was his own television, not A's.
*60 Defendant did not stick a knife in the painting, although he did kick it with his foot, and in any event the painting belonged to him. (Defendant did not testify about the window.)
Based on its theory of the case, the state charged defendant with fourth-degree assault, for allegedly punching A on August 5, and second-degree criminal mischief, for allegedly damaging A's property on August 6. Before trial, the court ruled that the alleged damage to the apartment door and window would not be considered as part of the criminal mischief charge (because A did not own the apartment) but that the state would be allowed to put in evidence about the door and window as part of "the story of what happened" and as relevant to whether defendant acted recklessly on August 6.[2]
The case was tried to a jury. Defendant requested a limiting instruction with respect to the evidence from August 6. Specifically, he asked the trial court to instruct the jury that, "[i]f you find that the defendant committed the acts alleged" on August 6, "you may not use this evidence for the purpose of drawing the inference that because [the] defendant *427 committed the acts alleged on August 6, 2015, the defendant may be guilty of the crime of Assault in the Fourth Degree alleged on August 5, 2015."[3] Defendant argued to the court that evidence from August 6 was not relevant to the alleged assault on August 5 and that allowing the jury to consider it for that purpose would be "nothing more than propensity" evidence. The state opposed the instruction, arguing that the evidence of defendant's conduct on August 6 was relevant to defendant's intent on August 5-a valid noncharacter purpose under OEC 404(3) -specifically to show that "when [defendant] gets angry, he acts out when he doesn't get what he wants."
The trial court denied defendant's request for the limiting instruction. It reasoned that the incidents on *61 August 5 and 6 were "related to each other" and that "one could help prove the other in terms * * * of determining the defendant's mental state." It thus ruled that the evidence was admissible for a nonpropensity purpose under OEC 404(3). The parties disagree as to whether the court also implicitly conducted OEC 403 balancing at that time.
In closing argument, the state urged the jury to view the alleged assault on August 5 and the alleged property damage on August 6 as connected by a common theme of defendant reacting in anger when he did not get what he wanted. The prosecutor argued:
"[W]hen the defendant didn't get what he wanted, [A] suffered those consequences.
"On August 5th when he was demanding to have sex with her and she didn't want to, she got punched. On August 6th when he wanted to come back to the apartment that she'd kicked him out of and [she] wouldn't let [him] in, she suffered the property damage."
Later, the prosecutor reiterated that defendant was "frustrated, angry, and upset" on August 5 "because he didn't get what he wanted," which was sex with A, "[a]nd then on August 6th, * * * when he comes back to [A's] home and he sees all of his property out on the porch, there's the anger that drives him to drive his shoulder multiple times into the door, breaking it down."
The jury found defendant guilty of the assault on August 5. It acquitted him of the alleged criminal mischief on August 6. On appeal from the resulting judgment of conviction, defendant assigns error to the trial court's denial of his request for a limiting instruction.
ADMISSIBILITY UNDER OEC 404(3)
In reviewing the denial of a request for a limiting instruction, the focus of our inquiry is whether evidence properly admitted for one purpose was inadmissible for another purpose. State v. Berg , 223 Or. App. 387, 402, 196 P.3d 547 (2008), adh'd to as modified on recons. , 228 Or. App. 754, 208 P.3d 1006, rev. den. , 346 Or. 361, 211 P.3d 930 (2009). If it was, and if the defendant proposed a limiting instruction that was clear and correct in both form and substance, then it is *62 error for the trial court to have refused to give the instruction. Id. "[W]here evidence is admissible for one purpose and not another, it is generally error-albeit not necessarily prejudicial error-for a trial court to refuse a limiting instruction that would minimize the jury's use of that evidence for the inadmissible purpose." State v. Langley , 363 Or. 482, 525-26, 424 P.3d 688 (2018) (except if the proffered instruction is legally incorrect or covered by other instructions).
The evidence of defendant's alleged acts on August 6 was admitted primarily to prove that defendant committed the charged crime of criminal mischief on August 6. The state also urged the jury, however, to consider that evidence in deciding whether defendant committed another charged crime, assault, on August 5. Defendant contends that the evidence that he damaged property at A's apartment on August 6 had no relevance to whether he committed assault on August 5, except as improper character evidence, and that the trial court therefore erred in denying his request for a limiting instruction.
*428 The state counters that the evidence from August 6 was admissible, under OEC 404(3), as relevant to defendant's hostile motive on August 5. In the state's view, the jury therefore could consider the evidence from August 6 in deciding defendant's guilt on August 5, and the trial court correctly denied the instruction.[4]
Under OEC 404(3), and subject to OEC 403 balancing, evidence of other crimes, wrongs, or acts is admissible in a criminal trial for noncharacter purposes, including to establish defendant's motive for the charged act. State v. Tena , 362 Or. 514, 520, 412 P.3d 175 (2018). The question before us is whether the evidence from August 6 was properly submitted to the jury as evidence relevant to defendant's *63 motive on August 5 or whether, as defendant contends, it was nothing but propensity evidence with respect to the alleged assault on August 5.
Whether evidence is relevant to motive is a question of law. State v. Carreiro , 185 Or. App. 19, 22, 57 P.3d 910 (2002). "Motive is a cause or reason that moves the will and induces action, an inducement which leads to or tempts the mind to commit an act." State v. Wright , 283 Or. App. 160, 171, 387 P.3d 405 (2016) (citation omitted). In short, it "refers to why a defendant did what he did." Id. (citation omitted). Establishing motive is generally unnecessary to prove guilt, but motive is "a relevant circumstantial fact," and "[e]vidence of motive is often pertinent as the basis to infer that the act was committed, or to prove the requisite mental state, or to prove the identity of the actor." Id. (citation omitted). At the same time, "courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury." Id. (citation and emphasis omitted). "[M]ere conjecture" or "the mere possibility" that a defendant had the same motive for two different alleged crimes is not enough to make evidence of one crime relevant to the defendant's motive for the other. Id. at 174, 387 P.3d 405. "Instead, something in the circumstances of the charged crime must suggest that the identified motive is at work." Id. When "the nature of the evidence at issue, evaluated in light of the circumstances of the crime, makes the inference a logical one," the required connection between the two acts "can be inferred." Id. at 172, 387 P.3d 405.
Here, the state's theory that the jury could properly consider the evidence from August 6 as relevant to defendant's motive to commit assault on August 5 is untenable. According to the state (and as argued to the jury), defendant punched A on August 5 because he was "frustrated, angry, and upset" that she would not have sex with him on that date, and he damaged property at A's apartment on August 6 because he felt "anger" upon seeing his belongings on the porch and about not being let into the apartment. Those are similar emotions, but they are not the same motive. If the state could admit other-acts evidence solely by showing that a defendant was "angry" or "upset" each time that he committed a bad act, criminal trials would be very different *64 than the evidence rules contemplate. That is not the type of connection between incidents that makes other-acts evidence relevant for motive. If a defendant allegedly committed two acts close in time because he was angry about one thing , then evidence regarding one act might be relevant to defendant's motive for the other act. See id. at 174, 387 P.3d 405 (requiring a "logical connection"). However, when a defendant allegedly committed two acts because he was angry about two different things, it cannot be said that the evidence of one act is relevant to prove the "motive" for the other, at least absent other relevant circumstances.
We therefore reject the state's argument that evidence of defendant causing property damage at A's apartment on August 6 was *429 relevant to defendant's motive for the alleged assault on August 5. Instead, we agree with defendant that, as to the assault charge, the evidence from August 6 was precisely the type of propensity evidence that we have warned against admitting under OEC 404(3) in the cloak of motive. See Wright , 283 Or. App. at 171, 387 P.3d 405. The state's closing argument reflects that reality-the state attempted to persuade the jury that defendant is a person who lashes out in anger when he does not get what he wants and that he acted in conformity with that propensity on August 5. That is a character argument. See State v. Davis , 290 Or. App. 244, 251, 414 P.3d 887 (2018) ("if the logical relevance of the [evidence] depended upon an inference that defendant acted consistently 'with a particular character trait' when he attacked [the victim], the [evidence is] not admissible for a noncharacter purpose"); see also, e.g. , State v. Kaylor , 252 Or. App. 688, 697-98, 701, 289 P.3d 290 (2012), rev. den. , 353 Or. 428, 299 P.3d 889 (2013) (the state's theory that evidence of the defendant's prior abusive acts toward patients made it more likely that defendant "reacted" to the victim in an abusive manner was "nothing more than propensity evidence"); State v. Bunting , 189 Or. App. 337, 345-46, 76 P.3d 137 (2003) (evidence of prior convictions "served only to show defendant's propensity to offer a victim alcohol and make sexual advances-to show that, 'if he did this before, it is more likely that he did it this time' "); State v. Whitney-Biggs , 147 Or. App. 509, 532, 936 P.2d 1047, rev. den. 326 Or. 43, 943 P.2d 633 (1997) (evidence that defendant "had a hair-trigger temper and that, when angry, she would *65 lash out physically" was "undeniably probative of a propensity towards violence").
In arguing for a contrary result, the state relies on State v. Hagner , 284 Or. App. 711, 715, 395 P.3d 58, rev. den. , 361 Or. 800, 400 P.3d 922 (2017), in which the defendant admitted to shooting and killing the victim but claimed that it was an accident and that he therefore lacked the requisite intent for the charged crime. To rebut that defense, the state offered evidence that the defendant had slapped the victim a week before the shooting and had yelled at the victim four days before the shooting. Id. at 720, 395 P.3d 58. On appeal, we ruled that the other-acts evidence was admissible under OEC 404(3) as relevant to the motive for the murder because it "tended to show that defendant had a hostile relationship with the victim in the week immediately preceding the shooting" and "a jury could find that he had been motivated by the same animosity when he fired the fatal shot." Hagner , 284 Or. App. at 720, 395 P.3d 58 (emphasis added). The fact that "the prior acts occurred so close in time to the shooting" would allow a jury to "infer that defendant's hostility toward the victim persisted until the time of the shooting and also motivated that crime." Id. at 721, 395 P.3d 58.
This case is different from Hagner . Unlike the situation in Hagner , the state never posited that the alleged assault on August 5 was motivated by preexisting hostility toward A. Rather, it argued that defendant became angry or upset with A on August 5, shortly after A returned home from a three-week absence, because A did not want to have sex with him that day. There was no evidence of hostility toward A before August 5, nor did the state argue that defendant was hostile toward A before August 5.
Given the evidence and the state's arguments, it would be illogical to infer defendant's motive for the alleged assault on August 5 from his actions on August 6. See Wright , 283 Or. App. at 172, 387 P.3d 405 ("the required connection can be inferred when the nature of the evidence at issue, evaluated in light of the circumstances of the crime, makes the inference a logical one"). If the jury found that defendant assaulted A on August 5, it might be permissible for the jury to infer that some hostility between defendant and A "persisted"
*66 from August 5 into August 6 and contributed to defendant's motive to commit criminal mischief on August 6.[5] Cf. Hagner , 284 Or. App. at 721, 395 P.3d 58 (permissible for jury to infer that the *430 defendant's recent hostility toward the victim "persisted until the time of the shooting and also motivated that crime"). However, it is not logical to infer that, because defendant was angry on August 6, he was also hostile toward the victim on August 5. Some circumstances might allow such a backward projection of hostility, but nothing in this record permits such an inference. See Carreiro , 185 Or. App. at 22, 57 P.3d 910 (only in "limited circumstances" will "an act that occurs later in time" than a charged crime be relevant and admissible for OEC 404(3) purposes).
The trial court erred when it concluded that evidence of defendant's acts on August 6 was admissible under OEC 404(3) as relevant to defendant's motive on August 5 and, consequently, erroneously denied defendant's request for the limiting instruction.[6]
PREJUDICE
We next consider whether the trial court's denial of the limiting instruction was harmless. The state does not contest prejudice. However, a trial court's error in refusing to give a limiting instruction is not necessarily prejudicial. Langley , 363 Or. at 525, 424 P.3d 688. "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003).
Whether defendant assaulted A on August 5 came down to a credibility contest between defendant and A. Cf. Kaylor , 252 Or. App. at 705-06, 289 P.3d 290 (evidentiary errors were not harmless in a case where "the central issue" was whether the defendant had strangled the victim, which came down *67 to a credibility contest between the defendant and one witness). Moreover, the state overtly encouraged the jury to view defendant as someone with a propensity to act violently when angry or upset, citing the alleged events of August 5 and 6 as examples of that propensity in action.[7] We cannot say that the trial court's denial of the limiting instruction had little likelihood of affecting the verdict on the assault charge under the circumstances. Rather, the lack of a limiting instruction may have caused the jury to convict defendant on an improper basis. See State v. Phelps , 73 Or. App. 68, 72, 698 P.2d 43 (1985) (defendant was entitled to a limiting instruction where there was "a substantial possibility that the jury might consider the 'other crimes' evidence for an improper purpose," and we could not say that the error was harmless).
REMAND
Finally, we address briefly the proceedings on remand. While this appeal has been pending, the Supreme Court decided State v. Baughman , 361 Or. 386, 404-05, 393 P.3d 1132 (2017), in which it described a "two-step analysis" for trial courts to follow when a party objects to the admission of other-acts evidence. One of those steps includes that, "if a trial court determines that proffered evidence is not relevant for a nonpropensity purpose [under OEC 404(3) ], then it must determine whether that evidence nevertheless is otherwise relevant under OEC 404(4)." Baughman , 361 Or. at 404-05, 393 P.3d 1132.
The state has never argued-in the trial court or on appeal-that the evidence from August 6 is admissible *68 under OEC 404(4) *431 to prove that defendant committed assault on August 5. However, it is unclear when and under what circumstances trial courts "must" address admissibility under OEC 404(4). See Baughman , 361 Or. at 404-05, 393 P.3d 1132. At a minimum, Baughman suggests that, on remand from an appellate decision reversing admission based on OEC 404(3), the state may argue that evidence is admissible under OEC 404(4) even if the state did not previously argue OEC 404(4). See Baughman , 361 Or. at 411, 393 P.3d 1132. The court's more recent decision in Tena suggests the same. In that case, the court concluded that the trial court had erred in admitting evidence under OEC 404(3) ; it declined to decide on appeal whether the evidence was alternatively admissible under OEC 404(4), in part because OEC 404(4) was not raised in the trial court; but it stated that "the trial court can address that issue on remand." Tena , 362 Or. at 525-26, 412 P.3d 175.
In light of Baughman and Tena , we note that our remand should not be interpreted as prohibiting the trial court from analyzing OEC 404(4) admissibility before deciding whether a new trial is necessary.
Judgment of conviction for fourth-degree assault reversed and remanded; otherwise affirmed.

Because we are reversing the assault conviction based on defendant's first assignment of error, we need not address defendant's second and third assignments of error, which challenge other aspects of his assault conviction.

See ORS 164.354 (a person who intentionally or recklessly damages property of another in an amount exceeding $500 commits second-degree criminal mischief).

Defendant's proposed instruction contained a typo in one of the dates, which was clearly a typo in context, and the state does not assert otherwise or argue that the typo was legally significant. To avoid confusion, we use the correct date.

In the trial court, the state argued that the evidence from August 6 was relevant to defendant's "intent" on August 5, while on appeal the state argues that it was relevant to defendant's "hostile motive" on August 5. "[E]vidence offered to prove hostile motive is also probative of intent," State v. Hagner , 284 Or. App. 711, 718, 395 P.3d 58, rev. den. , 361 Or. 800, 400 P.3d 922 (2017), and the trial court admitted the evidence as relevant to defendant's "mental state" generally. The state has not changed the substance of its argument, so we address the argument as framed on appeal but consistent with how it was argued below.

Defendant did not request a limiting instruction to prevent the jury from considering evidence from August 5 in deciding whether he committed criminal mischief on August 6, and we express no opinion on the relevance of defendant's acts on August 5 to the alleged crime on August 6.

Except for the motive theory of admissibility, which we have rejected, the state does not contest the clarity or correctness of defendant's proposed jury instruction. See Berg , 223 Or. App. at 402, 196 P.3d 547. Nor does the state assert that the jury instructions as a whole made the proposed instruction unnecessary. See Langley , 363 Or. at 526, 424 P.3d 688.

Although the jury acquitted defendant on the criminal mischief charge, it does not follow that it necessarily found that defendant did not commit the alleged acts on August 6. To the contrary, the jury could have found that defendant did everything that the state alleged on August 6 and still acquitted him of second-degree criminal mischief. That is because second-degree criminal mischief requires damage to property of another in excess of $500. ORS 164.354. The alleged damage to the apartment door and window were not included in the charge, the painting was valued at only $300 (and defendant contended that it belonged to him), and defendant admitted to damaging the $1,000 television but testified that it was his television. Accordingly, the jury could have acquitted defendant simply because it was not convinced beyond a reasonable doubt that A owned the television. The acquittal on the criminal mischief charge therefore does not affect our prejudice analysis as it might in other circumstances.